No. 9957.

SPENCER, ET AL. *v.* BRUNDAGE.

Decided January 10, 1921.

Action to recover money paid on the purchase price of a rooming house. Judgment for plaintiff.

*Affirmed.*

On Application for Supersedeas.

1. VENDOR AND VENDEE—*Purchase Money—Payment.* A broker acting for defendants, sold a rooming house to plaintiff receiving $1,000 to apply on the purchase price; of this amount he retained $750 as his commission, delivering the balance to defendants. *Held,* that in legal effect, defendants received from plaintiff $1,000 of her money as a part of the purchase price.

2. ACTIONS—*Money Had and Received.* An action for money had and received can always be maintained wherever one has received money which, in equity and good conscience, he ought to pay over.

*Error to the District Court of the City and County of Denver, Hon. C. J. Morley, Judge.*

Mr. H. E. LUTHE, for plaintiffs in error.

Messrs. RUSH & CLINE, for defendant in error.

MR. JUSTICE ALLEN delivered the opinion of the court.

THIS is an action to recover the sum of $1000, alleged to have been paid by plaintiff to a real estate broker for the use and benefit of the defendants, and received by them, as a part of the purchase money for a rooming house. A trial was had to a jury, and at the close of all of the evidence the court directed a verdict for the plaintiff. Judgment on the verdict was entered. Defendants bring error, and the cause is before us upon their application for a supersedeas.

The direction of the verdict in favor of the plaintiff is assigned as error. Admitted or undisputed facts, relevant to the propriety of a directed verdict, appear in the record as follows:

The defendants were the owners of the furniture and business of a rooming house, known as the Luna Hotel, in the city of Denver. They informed one G. M. Walker, whom they describe in their testimony as a "curb broker" and "business chance man," that they would sell their rooming house if they could get "twelve thousand, net" to themselves. Walker then sought to interest the plaintiff in the purchase of the defendants' rooming house. Thereafter, and on February 21, 1920, Walker and the plaintiff signed an instrument in writing which, in part, reads as follows:

"Recd. of Clara E. Brundage $1,000 as a part payment on the furniture and furnishings in the rooms     *     *     * known as the Luna Hotel, subject to the following conditions that the purchase price is to be $12,500.00 to be paid as follows: $7,000 is to be paid in cash on or before March 1, 1920, when a good and clear title is to be given to the said furniture and furnishings and possession of the premises in which the same are contained and also the lease that is now on the premises is to be transferred to the said Clara E. Brundage with the consent of the owner of said premises.     *     *     *"

The plaintiff, Mrs. Brundage, at this time gave Walker a check for $1,000.

It appears that on the same day, Feb. 21, 1920, Walker

informed the defendants that he had found a purchaser for them. In his testimony he says:

"I submitted Mrs. Brundage's offer to them and they said they would carry it through; they said there was no question about the transfer of the old lease."

Stella Spencer, one of the defendants, called as an adverse witness for cross-examination, gave the following testimony:

Q. How did you know what you were going to get for the place?

A. I had told Mr. Walker twelve thousand net.

Q. When you inventoried it you didn't know what you were going to get for your property?

A. Certainly, because by that time he (Walker) had got the deposit on it, and it was to be $12,500. * * *

Q. What did he tell you?

A. He told me how the payments were to be made.

The record shows that the defendants were willing to sell the rooming house upon the terms agreed upon in the writing between Walker and the plaintiff, so far as concerns amount and time of payments and the assignment of the lease. When asked if Walker said anything about the lease, the witness Spencer, one of the defendants, answered:

"We naturally supposed the lease was to be assigned."

Further testimony along this line by her is as follows:

Q. Did you know that in your lease you had an agreement that unless you got the written consent of the owner you couldn't assign it?

A. Certainly.

Q. And you were, of course, intending to get the written consent of the owner?

A. Yes, sir.

Walker informed the defendants that he had received a deposit of $1000 from the plaintiff to apply on the purchase price of $12,500. The defendants were satisfied with the terms of sale arranged by Walker, and they understood, and knew the fact to be, that the sale could not be com-

pleted unless and until the owner of the building in which their rooming house was conducted should consent to an assignment of the lease.

The $1000 was received by the defendants as a part of the purchase money, and knowingly was it thus received. Counsel for defendants states in his brief that the defendants never received this money, but it is admitted in the record that Walker accounted to them for all of it. The defendants allowed Walker to retain out of the $1000 the sum of $750 as his commission for finding the purchaser, the plaintiff. He thereupon delivered to them the balance, $250. It can make no difference whether Walker delivered the $1000 to the defendants and then received back $750 thereof as his commission, or was permitted in the first instance to retain $750 and deliver the balance. In legal effect the defendants received from plaintiff $1000 of her money as a part of the purchase price.

It next appears that the defendants were unable to obtain the landlord's consent to an assignment of the lease, prior to March 1, 1920, and they were, therefore, unable to complete the sale of the rooming house to the plaintiff. The plaintiff on March 1, 1920 notified the defendants that she rescinded the contract, and demanded the return of the $1000. The defendants refused to refund the money, and this action was then brought. Other facts appearing in the record do not change the effect of those herein recited, and therefore need not be set forth.

Whatever may have been the theory upon which the trial court directed a verdict for the plaintiff, the direction was right upon principles which permit a plaintiff to maintain an action for money had and received. As said in *Zang Brewing Co. v. Bernheim,* 7 Colo. App. 528, 44 Pac. 380, "such actions can always be maintained wherever one has received money which, in equity and good conscience, he ought to pay over." A recovery of purchase money paid may be had upon various grounds, as stated in 39 Cyc. 2001, as follows:

"When the proposed contract was never entered into, or

where the contract is one that is not enforceable, or has been rescinded by mutual consent, by the vendor, or by the purchaser under a right to do so, the purchaser may sue the vendor to recover the money which has been paid by the purchaser to the vendor."

The judgment is right, and is therefore affirmed.

MR. JUSTICE SCOTT, sitting for Mr. CHIEF JUSTICE GARRIGUES, and MR. JUSTICE BAILEY concur.