No. 18,843.

H. O. Aaberg, Stella R. Aaberg v.
H. A. Harman Company.
(358 P. [2d] 601)

Decided December 12, 1960. Rehearing denied January 30, 1961.

Mr. C. J. BERARDINI, Mr. HENRY BLICKHAHN, for plaintiffs in error.

Messrs. DUTCHER AND BRATTON, Mr. ED ROY SIMMONS, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties are here in inverse order of their appearance in the trial court. We will refer to the plaintiffs in error as the Aabergs and to the defendant in error corporation as the Harmans because H. A. Harman, Arsona Harman and Nancy Harman, incorporators of this family company, are the actual parties in interest and assigned their claim to the corporate plaintiff below. In like manner Aabergs had operated through various entities known as Aaberite Industries, Aaberite Trust and Western Engineers Co. One of the contentions of the Aabergs is that some of these companies should have been, but were not, made parties. We dispose of this assignment of error with the observation that the entire record reveals the Aabergs personally conducted all transactions with the Harmans and used the fund involved for their own personal use. These alleged companies are wholly-owned family trusts and were merely conduits through which the money flowed to the Aabergs.

The action in the trial court was founded on fraud and deceit, and although set out in separate causes of action, a summary of the complaint is: That the Harmans were inexperienced in and unfamiliar with the mining business and they relied implicitly on the Aabergs' representations to them; that the Aabergs carried on their mining operations through various purported trusts established to defraud the public, and particularly the Harmans; that the Aabergs made false and

fraudulent material representations, in reliance upon which the Harmans parted with $143,000, all of which the Aabergs received and most of which they used for their own personal bills and living expenses. The complaint further avers that immediately upon learning of the false and fraudulent character of the representations made by the Aabergs, the Harmans rescinded their agreement for sale and purchase of a percentage interest in the mining operations of the Aabergs by serving a "Notice of Rescission and Offer of Restoration" on the Aabergs, and by delivering to the Aabergs everything the Harmans had received, namely so-called equity units purporting to represent percentage interests in the Aaberg properties and operations. The complaint prayed for damages in the amount actually paid by the Harmans plus exemplary damages and execution on the bodies of H. O. and Stella Aaberg.

Trial was to a jury which returned a verdict in favor of the Harmans in the amount of $143,000, the amount invested by the Harmans. In addition the jury returned verdicts for exemplary damages in the amount of $46,804. On these verdicts final judgment was entered.

Of the seven points urged by the Aabergs in their summary of argument, we deem only two to merit comment. They are:

1. That the court erroneously permitted the Harmans to pursue inconsistent remedies: one in equity for rescission and the other in law for damages.

2. That the alleged misrepresentations were not of past or present existing material facts, and that both the allegations of the complaint and the proof establish the statements by the Aabergs to be merely opinions of value and of possible future development, and opinions as to possibilities of future profits.

FIRST QUESTION TO BE DETERMINED.

*When a party has fully performed a contract and thereafter on the ground of fraud and deceit rescinds the contract by the service of a "Notice of Rescission*

*and Offer of Restoration"* and by delivering to the other party all that he has received under the terms of the agreement, and then brings suit to recover the amount paid under the contract, is such an action deemed to be one in damages for the tort?

This question is answered in the negative.

 The resolution of this question does not affect the recovery by the Harmans of the amount which they paid over to the Aabergs as a result of the misrepresentations. The jury verdict and the judgment of the court amounted to restoration in full plus interest to the Harmans. The determination of whether the action is in damages, or for rescission, or neither, affects the judgment for punitive damage recovered by the Harmans. The Aabergs also contend that a determination of the nature of the action is imperative as affecting the right of the court to permit execution against the bodies of the Aabergs.

Confusion on the question whether one can rescind and have an action in damages arises over inept language to be found in two Colorado cases. In *Jessey v. Butterfield,* 61 Colo. 256, at page 259, 157 Pac. 1, is to be found the following statement:

"The rule is that where the execution of a contract has been brought about by fraud, the wronged party has an election of remedies: (1), he may affirm the contract and sue for damages; (2), where the right to rescind has not been lost, *he may rescind and sue for damages,* or to recover money paid or property transferred in pursuance of the contract; (3), he may sue in equity, in a proper case, to cancel or rescind the contract, and to recover that with which he has parted, and for other equitable relief." (Emphasis supplied.)

Also in *Gibraltar Colorado Life Co. v. Brink,* 113 Colo. 304, at page 306, 157 P. (2d) 134, is the statement:

"When one is injured, as Brink claims to have been, two remedies are open to him, first to *rescind and re-*

*cover damages,* second to affirm and recover for the resulting injury."

In neither of these cases, however, was the question of rescission and damages before the court. In view of the numerous decisions in Colorado, both before and after these two cases, neither can be cited as authority for the proposition that one can have rescission and damages.

The nature of the action here is best described by the court in *Wheeler v. Wilkin,* 98 Colo. 568, at page 570, 58 P. (2d) 1223, where it was said:

"Upon discovery of the fraud, plaintiff has the right either to affirm the contract and sue for damages, or to rescind the contract and sue for the return of the money paid. *Springhetti v. Hahnewald,* 54 Colo. 383, 131 Pac. 266. The former would be an action in tort (deceit); the latter, an action on contract (assumpsit for money had and received). Where one has received money which in equity and good conscience he ought to pay over to another, the law creates a promise to pay, and if he refuses to pay, an action in assumpsit for money had and received will lie. *Springhetti v. Hahnewald,* supra; *Johnson v. National Sugar Mfg. Co.,* 88 Colo. 404, 297 Pac. 995; *Spencer v. Brundage,* 69 Colo. 520, 194 Pac. 1104; *Ph. Zang Brewing Co. v. Bernheim,* 7 Colo. App. 528, 44 Pac. 380, 2 R.C.L., pp. 778, 780, 782, 788."

In the Wheeler case the plaintiff bought stock in a corporation, whereas in the case at bar the Harmans purchased percentage interests in certain mining claims and other holdings of the Aabergs and their so-called Trusts. In the Wheeler case the plaintiff alleged that by reason of false representations the plaintiff was induced to purchase the shares of corporate stock and was induced to pay therefor the sum of $3,000; that promptly upon discovering the fraud plaintiff rescinded by tendering back the stock and demanding return of the purchase price. Also in the Wheeler case are to be found allegations "that in inducing the purchase of the stock

defendant was guilty of malice, fraud and wilful deceit."
Then followed the demand for the return of the amount
paid out and for execution against the body.

The case at bar is almost parallel to that case and the
allegations are very similar: alleging the misrepresenta-
tions, the payment of money, the Notice to Rescind and
the return or reconveyance of the percentage interests,
plus allegations of fraud and deceit and a demand in
every instance for the exact amount of the money paid
out. As the court said in the Wheeler case, such a com-
plaint "stated a good cause of action for money had and
received."

■ From what we have said, it is apparent that this
is not an action in damages and, therefore, exemplary
damages can not be recovered. The statute on exemplary
damages is C.R.S. '53, 41-2-2, which reads:

"In all civil actions in *which damages shall be as-
sessed* by a jury for wrong done to the person, or to
personal or real property, and the injury complained of
shall have been attended by *circumstances of fraud,*
malice or insult, or a wanton and reckless disregard of
the injured party's rights and feelings, *such jury, in
addition to the actual damages sustained by such party,
may award him reasonable exemplary damages."* (Em-
phasis supplied.)

The verdicts in the case at bar were not an assessment
of damages.

■ On the question of the propriety of body execu-
tion allowed by the court, both the Wheeler case and a
prior case, *Springhetti v. Hahnewald,* 54 Colo. 383, 131
Pac. 266, are strong authority for the holding, which we
reiterate here, that even on the common count for money
had and received body execution is proper. We quote
again from the *Wheeler* case:

"The allegation that defendant was guilty of malice,
fraud and wilful deceit and the prayer for a body execu-
tion did not convert that action into a tort action. A
body execution may issue in actions 'founded upon tort.'

C.L. §5964. That does not mean in tort actions only. If an action grows out of a tort it is 'founded upon tort' within the meaning of the statute. Defendant committed a tort when, by false representations, he induced plaintiff to purchase and pay for the stock. That tort gave plaintiff the right to rescind the contract and sue, as she did, in assumpsit for the return of the money she paid. In that manner plaintiff's right of action grew out of the tort, or, as the statute has it, was founded upon tort. In such a case a body execution may issue regardless of the form of the action; that is to say, regardless of whether the action is in tort for damages or in assumpsit for money had and received."

SECOND QUESTION TO BE DETERMINED.

*Are the allegations of the complaint and the proof offered in support thereof merely opinions of value and of possible future development?*

This question is answered in the negative.

█ In addition to oral representations over the telephone and conversations between the parties when they met, the voluminous record is replete with letters written by Mr. Aaberg. In the extensive dealings between the parties we find, both in the allegations of the complaint and in the evidence, some representations which appear to connote predictions as to the future, to-wit: That the minerals produced would pay costs of operations and *future developments;* some operations *could* and *would* be placed in production in a short time; that productions *could* be obtained inexpensively; that the work would start at a stated time so that enormous profits could be obtained. Nevertheless an examination of the letters and all of the representations indicate that the material inducement which prompted the Harmans to part with their money were representations of present and existing facts. No good purpose would be served in enumerating all of these representations, but some of the most glowing found in the letters were to the effect that the property did in fact contain minerals that had

an *established and present* market, and so situated as to be mined inexpensively. Letters were dispatched advising the Harmans of a rich strike when, in fact, no strike had been made; that their engineer had made valuable discoveries when there was no engineer. The party referred to as being an engineer was in fact a carpenter on the job with questionable geological or engineering experience. Other representations were that a vein of pitchblende was discovered in the property when there was no such discovery; that carnotite had been found when it had not; that a rich uranium strike had been made just a mile away from the Aaberg property, and that the engineers in charge had determined that the trend went right through the Aaberg holdings, and that the strike on the property a mile away was continuing to take out fine high grade ore, when in fact there was no such strike and no such mining of ore; that Aaberg had definitely opened into good looking ore on the other side of Huntsman Gulch, which was false; that the first uranium strike near the postoffice was followed by another rich strike two miles south (the latter statement produced a payment from the Harmans of $25,000); that they had found ore so rich that it burned up the scintillator. All these representations were shown to be false, and made for the purpose of inducing the Harmans to part with their money.

A reading of this record leads us to observe that a general scheme or design to defraud is conclusively shown by the evidence.

That portion of the judgment in the amount of $143,000, the sum paid by the Harmans and received by the Aabergs plus interest as provided by statute and the order of the court for body executions is affirmed. Judgment for $46,804 exemplary damages is reversed and the cause remanded to the trial court with directions to vacate the judgment for exemplary damages.

MR. CHIEF JUSTICE SUTTON did not participate.