No. 19,005.

ELSIE MORGAN, AND ALLEN ENTERPRISES, INC., v.
MADELYN R. BRINKHOFF.

(358 P. [2d] 43)

Decided December 19, 1960.

Messrs. Smith, Kelly and Ettenberg, for plaintiffs in error.

Mr. G. M. Westa, Mr. Carl F. Eiberger, for defendant in error.

*En Banc.*

Mr. Justice Frantz delivered the opinion of the Court.

Madelyn R. Brinkhoff, nee Nelson, sued Elsie Morgan and Allen Enterprises, Inc., for money had and received and recovered a judgment in the sum of $5,000.00, representing the initial payment she made to the defendants on a contract for the purchase from Elsie Morgan of the business of the Blue River Inn, located in Dillon, Colorado. Feeling aggrieved by what they consider a groundless judgment, and by reason of alleged errors committed preliminary to and in the course of the trial, defendants seek a reversal of the judgment by writ of error.

Three grounds for reversal are urged: (1) error in denying motion for particularization of acts "giving rise to rescission of the contract"; (2) error in the admission of certain testimony; and (3) error in the findings and award of judgment in that:

"(a) The court found that the contract, exhibit A, was rendered void by the failure of Elsie Morgan to approve the said contract within 3 days from July 17, 1957.

"(b) The Court found that the contract, exhibit A, contained a condition precedent, 'Assuming present lease as is. The option to be agreed upon, lessee and lessor,' and made the further finding that the quoted language was ambiguous and uncertain and therefore the entire contract was void and of no force and effect between the parties.

"(c) The court found that the defendants breached the purported contract in that the defendants insisted

upon payment of an amount $494.72 in excess of that called for under the contract, exhibit A.

"(d) The court entered judgment in plaintiff's favor upon findings which were inconsistent with the pleadings and which facts were never alleged in the pleadings.

"(e) The court should have entered judgment in favor of the defendants, in view of the evidence showing failure of plaintiff to make a tender of performance, where the terms of the contract, exhibit A permitted forfeiture of the deposit."

We have reviewed the record of this case and conclude that the propositions advanced under points 1 and 2 cannot be sustained. They are urged perfunctorily and without amplitude, and hence we dispose of them with brevity.

Amplification of the complaint in four respects was requested in a motion for bill of particulars. Two were granted, and plaintiffs in error say they are adversely affected by the denial of the one relating to the allegation immediately following a statement of claim for money had and received in the words suggested by Form 8, Appendix A, R.C.P. Colo. This allegation charges:

"That said sum of money was paid to Defendants by Plaintiff pursuant to a contract for purchase by Plaintiff of certain real property [later amended to "business property"] owned by the Defendant, Elsie Morgan, in Summit County, Colorado, which contract has been rescinded by reason of the actions and conduct of the Defendants."

█ Bills of particulars ordinarily should not be utilized to unduly expand the pleadings where discovery is the proper method for obtaining information falling outside the category of ultimate facts. *Wisconsin, etc. Foundation v. Vitamin Technologists,* 1 F.R.D. 8. See *Modern Food Process Co. v. Chester Packing, etc. Co.,* 29 F.S. 405. Whether to grant or deny a motion for a bill of particulars in accordance with 12 (e) R.C.P. Colo.

calls into play the sound discretion of the court. *Louisiana Farmers' Protective Union v. Great Atlantic, etc Co.,* 31 F.S. 483. Even under code pleading, motions seeking elaboration of allegation were addressed to the sound discretion of the court. *Hall v. Cudahy,* 46 Colo. 324, 104 Pac. 415.

Error is assigned to the action of the trial court in admitting testimony concerning "the condition of the title to the real property wherein the business in question was situated." Witnesses who drafted the contract testified as to the provision therein, "Assuming present lease as is. The option to be agreed upon, lessee and lessor." They sought to explain this patent ambiguity, and although not in agreement as to what generally was intended by the parties, on one aspect they appeared to be in accord — the contract was contingent on the ability of the lessor and Brinkhoff to enter into a compact of some sort concerning possession.

The conduct of Brinkhoff and the agents for Morgan was consonant with this understanding. As required by the lease between the lessor and Morgan, the lessor's consent to an assignment of the lease to Brinkhoff had to be obtained. But equally important to Brinkhoff was the status of ownership of the leased premises in view of the fact that title thereto was in the City and County of Denver through the water department's Blue River Project. These matters were pertinent to the fulfillment of the quoted provision, and hence evidence bearing upon them was admissible.

It is contended that error was committed in permitting the attorney for Brinkhoff to testify to a telephone conversation with the attorney for Morgan and Allen Enterprises relating to the contract. Brinkhoff's attorney was unable to identify the voice of the attorney for Morgan and Allen at the time of the telephone dialogue, but was able to recognize the voice, and so stated at the trial, from personal conversations had with the attorney later. It has been held not to be error to admit

the testimony of a witness "as to his conversation over the telephone with a man whose voice he subsequently recognized as the voice of the defendant"; any significance to be attached to such circumstances relates to "its weight [rather] than its competency." *People v. Strollo,* 191 N.Y. 42, 83 N.E. 573; see *Kent v. Cobb,* 24 Colo. App. 264, 133 Pac. 424.

Moreover, the attorney for Morgan and Allen Enterprises was called by them as a witness and, in the course of his testimony, admitted having the conversation with the attorney for Brinkhoff. This satisfactorily established the identity of the person with whom counsel was speaking, and strengthened the evidence of identity previously given. *Clough v. Western Union Tel. Co.,* 99 S.C. 484, 83 S.E. 916.

Determination of the third point requires a recital of a number of facts. In final analysis, the intensity of the argument on this point is aimed at the nature of the relief granted in view of the complaint filed. As pleaded and tried, the case involves the right to recover money paid under a contract on the basis of a rescission by the parties prior to the institution of suit.

Brinkhoff signed an instrument which constituted an offer for the purchase of the Blue River Inn on July 17, 1957, under the terms of which she deposited $5,000.00 toward the full purchase price of $30,000.00. This instrument provided that, in the event of Morgan's failure to approve the instrument in writing within three days, the offer was to be null and void and the deposit returned. Morgan submitted a counter-proposal on the reverse side of the instrument, signed by her, on the 22nd day of July 1957, agreeing to the terms proposed by Brinkhoff, except that "(1) The total selling price is to be $31,500.00. (2) The grocery inventory is to be extra. (3) The remaining $5,000 of the down payment to be paid upon date of closing, Monday, 29 July, 1957. Inventory to be taken after 8:00 p.m. Sunday, 28 July,

1957. Monies collected after 8:00 p.m. Sunday, 28 July, 1957, are to be given to the Purchaser."

On the 22nd day of July, 1957, Brinkhoff made the following counter-offer juxtaposed to that made by Morgan, and it reads as follows:

"The above exceptions are agreeable to me with the following condition:

"(1) Grocery Inventory not to exceed $500.00." This counter-offer was signed by Brinkhoff.

The parties apparently acted upon the agreement as finally amended by Brinkhoff.

Brinkhoff eventually and after considerable delay obtained a transfer of the liquor license from the Town Council, for which she expended $300.45, and proceeded to apply for a state liquor license from the state licensing authority. An inventory of the fixtures, furniture, equipment, liquor, groceries, jewelry, novelties and other items was made. A deposit for electric service was made to the Public Service Company in the sum of $100.00.

The closing date had been set for August 7, 1957, and Brinkhoff was advised that she should have a check for the additional $5,000.00 on the down payment ready on that date, plus $997.00 to cover the inventory. She had contemplated an expenditure of $500.00 for the inventory of groceries, and felt that the provision in the original instrument for the business and for the furniture, fixtures, inventory and all equipment included everything except the groceries, which were excepted by the counter-proposal.

Notwithstanding the full purchase price envisioned the transfer of the business, the furniture, fixtures and complete inventory (except groceries not to exceed $500.00), Morgan wanted $497.00 additional for novelties. There is a dispute as to whether Morgan after a time agreed to forego the additional sum for the novelties, although the closing sheet retained the sum for these items.

Brinkhoff was not able to meet with the lessor of the

premises, one Wells, who was a non-resident of this state, in order to discuss the condition of the contract already quoted: "Assuming present lease as is. The option to be agreed upon, lessee and lessor." The agents for Morgan made an arrangement for Brinkhoff to meet the lessor shortly after the agreement was entered into, but the lessor did not appear for the conference. They never met to discuss what agreement could be worked out between them.

Morgan, by letter and verbally, threatened to declare a forfeiture of the $5,000.00 payment and finally served Brinkhoff with an ultimatum, whereupon Brinkhoff advised Morgan that the latter was in effect rescinding the contract, and demanded back the $5,000.00 initial deposit. A suit for money had and received ensued, resulting in a judgment favorable to Brinkhoff.

The court determined that the instrument as submitted, prior to the endorsements thereon of the counter-proposals, was ineffectual and void by reason of the fact that it was not signed by Morgan within three days, and as a dead instrument could not be vitalized by the subsequent acts of the parties. The court later amended the judgment to further hold that the words regarding the assumption of the lease and entering into an option "to be agreed upon, lessee and lessor" were ambiguous, were shown to be so because of the difference between the parties as to what the terms meant, and that by reason thereof there had been no meeting of the minds in connection with the contract; that the demand for an additional sum for novelties was contrary to the express provisions of the agreement, rendering abortive the attempt of Morgan to place Brinkhoff in default; and entered judgment for the return of the $5,000.00 paid, plus interest and costs of action.

Since the offer as originally made required approval in writing by Morgan, and no such approval or other consensual act appears in the record, no contract was established; but the parties by their subsequent acts, in

which they retained most of the original offer and varied it in certain respects by counter-proposals, attempted to fashion an agreement between them. The basic question in this case is whether a contract containing terms and conditions to which the parties mutually agreed was effectuated.

It is evident that there is ambiguity in an important item and that the parties were not in accord as to the meaning of the ambiguous portion. In view of the testimony presented, the trial court was intra vires and justified in determining that it could not resolve the uncertainty, and could not construe as certain that which was uncertain in terms and diversely interpreted by the parties. "If essentials are unsettled and no method of settlement is agreed upon, there is no contract." *Homebuilders Assn. v. Albright,* 88 Colo. 146, 293 Pac. 345.

"Where one has received money which in equity and good conscience he ought to pay over to another, the law creates a promise to pay, and if he refuses to pay, an action in assumpsit for money had and received will lie." *Wheeler v. Wilkin,* 98 Colo. 568, 58 P. (2d) 1223. Rescission by a party or the parties to a contract by act of either or both is recognized in the law. 12 C.J.S. §5, p. 945. An action for money had and received is a proper remedy where such a rescission takes place. *Aaberg v. Harman Co.,* 144 Colo. 579, 358 P. (2d) 601.

Where a contract is too indefinite and uncertain to be enforceable and money has been paid thereunder, an action for money had and received for money so paid will lie. *Smith v. Dunn,* 165 Ore. 418, 107 P. (2d) 985.

We believe the cited law is applicable to the facts in this case and that the court properly resolved the question of the remedy pursued and the relief granted. The record contains evidence warranting a finding that the contract had been rescinded by acts of the parties, laying the groundwork for an action for money had and received. ·

The demand for an additional sum to be paid for novelties, contrary to the terms of the contract, afforded an additional and substantial ground for the recovery of the money paid on the contract, whether we deem the demand for an additional sum an attempt by Morgan to in effect rescind the contract, or whether we view the letter of Brinkhoff to Morgan advising that she considered Morgan's conduct as constituting rescission and demanding the return of her deposit as resulting in a rescission.

Finding no error in the record, the judgment is affirmed.