**SIEGEL OIL COMPANY,**
Plaintiff-Appellant,

v.

**GULF OIL CORPORATION,**
Defendant-Appellee.

No. 10–46.

Temporary Emergency Court of Appeals.

Argued Dec. 1, 1982.

Decided Feb. 1, 1983.

Steven Schaars, Washington, D.C., with whom Joan L. Goldfrank of Collier, Shannon, Rill & Scott, Washington, D.C., was on the brief for plaintiff-appellant.

Bradley F. Stuebing, Houston, Tex., with whom Charles O. Murray, III, and John R. Knight, Houston, Tex., were on the brief for defendant-appellee.

Before PECK, HEMPHILL and LACEY, Judges.

JOHN W. PECK, Judge.

On June 9, 1978, Siegel Oil Company (Siegel) filed suit in the United States District Court for the District of Colorado to recover from Gulf Oil Corporation (Gulf) damages that allegedly resulted from violations of the Mandatory Petroleum Allocation Regulations, 10 C.F.R. pts. 210 & 211 (Allocation Regulations). Siegel's action is based on § 210 of the Economic Stabilization Act of 1970 (ESA), as amended, 12 U.S.C. § 1904 (note), as incorporated by § 5 of the Emergency Petroleum Allocation Act of 1973 (EPAA), as amended, 15 U.S.C. § 754. Siegel alleged that Gulf improperly invoked the substitute supplier rule, 10 C.F.R. § 211.25, by substituting Acorn Petroleum, Inc. (Acorn) as the supplier of the petroleum products that, under the Allocations Regulations, Gulf was required to supply to Siegel.

The district court, granted summary judgment to Gulf on the ground that Siegel's claim was barred by the applicable Colorado statute of limitations, Colo.Rev.Stat. § 13–80–106 (1973). 556 F.Supp. 302 (D.Colo. 1982). On appeal, Siegel contends that the district court erred, first, in holding that Colorado law provided only a two-year limitations period for this action and, second, in holding that Siegel's action accrued in 1974. Because we find that district judge Alfred A. Arraj correctly construed and applied the appropriate federal and state law, we affirm.

I

Throughout 1971 and the first ten months of 1972, Gulf, a refiner and supplier of petroleum products, sold gasoline to Siegel, an unbranded, independent reseller of refined petroleum products located in Denver, Colorado. In October 1972, Gulf made a business decision to withdraw as a marketeer of refined petroleum products from the upper midwestern and northwestern United States. Included in the region from which Gulf was withdrawing was Colorado. At about that time Gulf informed Siegel that as a result of its marketing decision, Gulf would not renew its supply contract with Siegel that was scheduled to lapse in November 1972. Under that contract Siegel had purchased 2,660,492 gallons of gasoline from Gulf during the first ten months of 1972.

The Federal Energy Office (FEO), a predecessor of the Department of Energy (DOE), issued the Allocation Regulations pursuant to the EPAA, effective January 15, 1974. In part, the Allocation Regulations required a supplier of petroleum products during the period of controls to supply monthly volumes to each customer it had in 1972 equal to the volumes that the customer had purchased in the corresponding month in 1972. 39 Fed.Reg. 1933 (1974). In 1979 DOE updated the base period. 44 Fed.Reg. 42545 (1979). The Allocation Regulations also contained a substitute supplier rule:

> Any supplier may arrange to supply any purchaser which is entitled to receive an allocation from it through another supplier or suppliers in accordance with normal business practices.

10 C.F.R. § 211.25(a), *as amended,* 39 Fed. Reg. 15970 (1974). The Allocation Regulations, as amended, were applicable until January 28, 1981, the effective date of the deregulation of motor gasoline. Exec.Order No. 12287, 46 Fed.Reg. 9909 (1981).

In February 1974, Siegel, in accordance with the Allocation Regulations, requested Gulf to supply Siegel with its 1972 base period volume of gasoline. By letter, dated March 1, 1974, Gulf informed Siegel that Acorn, which had purchased most of Gulf's Colorado assets and with which Gulf had an ongoing contractual relationship, would

supply Siegel with Gulf's allocation obligations. Siegel, under protest, purchased gasoline from Acorn from March 1974 through January 1981. Throughout this period Siegel was able to secure a supply of gasoline equal to its base-period allocation.

By letters to FEO and to Gulf, dated March 8, 1974, Siegel protested Gulf's designation of Acorn as a substitute supplier for Siegel. In July 1975, in a meeting with Gulf, Siegel again protested Gulf's designation of Acorn as its substitute supplier. In June 1977, a regional office of the Federal Energy Administration (FEA), the successor to FEO and the predecessor of DOE, issued an informal opinion that Gulf's designation of Acorn as a substitute supplier was proper. On March 14, 1978, Siegel filed a formal complaint with DOE. On May 10, 1978, DOE informed Siegel that DOE would take no action against Gulf because it had reviewed and approved a similar use of the substitute supplier rule by Gulf in a nearly identical case, *Mid-Michigan Truck Service, Inc.*, 3 FEA ¶ 83,100 (1976).

On June 9, 1978, Siegel filed suit against Gulf under ESA § 210 for damages that allegedly resulted from Gulf's designation of Acorn as the substitute supplier of Siegel. On April 21, 1982, only five days prior to trial, Gulf filed a motion for summary judgment on the ground that the applicable statute of limitations completely barred Siegel's claim. Following the bench trial, on July 23, 1982, the district court granted Gulf's summary judgment motion. On July 28, 1982, the district court entered judgment for Gulf and dismissed Siegel's complaint on the basis of the July 23, 1982 order and opinion. On appeal to this Court, Siegel contends that the district court erred both in its application of the relevant statute of limitations and in its determination as to when Siegel's claim accrued.

II

In *Ashland Oil Co. v. Union Oil Co.*, 567 F.2d 984 (Em.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978), this Court stated:

Neither the EPAA nor § 210 of the ESA contains a limitation provision. Generally in the absence of a statutory limitation provided by Congress, a federal court will apply the most analogous state law of limitations. However, in determining whether a state statute of limitations will be applied to a federal right, courts must be guided by the public policy expressed by Congress. Thus, there need not be applied a state limitation period which the court finds to be inconsistent with the federal policy involved.

(citations omitted).

The district court, relying on *Ashland Oil Co.*, held that the applicable state law was Colo.Rev.Stat. § 13–80–106, which states:

All actions upon a liability created by a federal statute, other than for a forfeiture or penalty for which actions no period of limitations is provided in such statute, shall be commenced within two years or the period specified for comparable actions arising under Colorado law, whichever is longer, after the cause of action accrues.

The district court construed § 13–80–106 as imposing a two-year limitations period on this action. The district court characterized this action as one "founded upon federal statutes and regulations which create rights unknown to common or state statutory law." 556 F.Supp. at 305. That court, relying upon *Colorado Petroleum Products Co. v. Husky Oil Co.*, 646 F.2d 555 (Em. App.1981), found that Colorado law does not create any rights comparable to those that Siegel seeks to enforce. The district court then concluded that no comparable action exists under Colorado law for which a limitations period longer than two years is authorized.

Siegel first contends that the district court construed the savings clause in § 13–80–106 too narrowly. Siegel contends that this action is comparable to actions for money had and received, wrongful retention or appropriation of money, and breach of an implied sales contract. Colorado establishes a six-year limitations period for each of these actions. Colo.Rev.Stat. § 13–80–110. Accordingly, Siegel contends that

a six-year limitations period is applicable to this action.

The nature of Siegel's claim presents a question of federal law. *Ashland Oil Co. v. Union Oil Co., supra* at 990. This action was well characterized by the district court as one "founded upon federal statutes and regulations." Whether an action comparable to this one arises under Colorado law, however, is a question of Colorado law. This question was not resolved in *Colorado Petroleum Products Co. v. Husky Oil Co., supra,* because the only issue presented there was what Colorado statute of limitations applied to claims under § 210 of the ESA for punitive rather than compensatory damages. Nevertheless, we agree with the district court that no action comparable to this one arises under Colorado law.

■■■ Siegel's contention that this action is comparable to an action for money had and received cannot be maintained. A claim for money had and received is "based on the well established common law action of assumpsit *arising where one has received money* which in equity and good conscience he ought to pay over to another." *National Surety Corp. v. Citizens State Bank,* 41 Colo.App. 580, 593 P.2d 362, 364 (Colo.App. 1978), *aff'd en banc,* 612 P.2d 70 (Colo.1980) (emphasis added). *Accord Morgan v. Brinkhoff,* 145 Colo. 78, 358 P.2d 43 (Colo. 1960); *Aaberg v. H.A. Harman Co.,* 144 Colo. 579, 358 P.2d 601 (Colo.1960); D. Dobbs, Remedies § 4.2, at 236 (1973). The basis of this action is to avoid unjust enrichment; damage to the plaintiff will not, by itself, be sufficient to sustain the action. *Crouch v. Mountain States Mixed Feed Co.,* 140 Colo. 213, 343 P.2d 1052, 1057 (Colo. 1959). Siegel has contended neither that Gulf has received money from Siegel directly nor that Gulf has been enriched by its designation of Acorn as Siegel's substitute supplier. Accordingly, this action for damages is not comparable to one for money had and received. Siegel's contention that this action is comparable to one for money wrongfully retained or appropriated is similarly meritless because such an action will lie only where the defendant has received

and wrongfully retains money from the plaintiff. *Carlson v. McCoy,* 193 Colo. 391, 566 P.2d 1073 (Colo.1977); *Reyer v. Blaisdell,* 26 Colo.App. 387, 143 P. 385 (Colo.App. 1914).

■■ Siegel's contention that this action is comparable to one on an implied contract because the Allocation Regulations created an implied contract for Gulf to supply Siegel is similarly without merit. At oral argument Siegel conceded that it was not suing on a theory of breach of contract. Additionally, this action is not comparable to an action on an implied contract as Colorado construes implied contracts. *Cablevision of Breckenridge, Inc. v. Tannhauser Condominium Association,* 649 P.2d 1093, 1096–97 (Colo.1982). *See also Johnson Oil Co. v. United States Department of Energy,* 690 F.2d 191, 196 (Em.App.1982) (applying the federal standard of "analogous statutes" rather than any standard of "comparable action", the court applied Wyoming's statute of limitations governing liabilities created by federal statute rather than the statute governing breaches of contract). Accordingly, this action is not comparable to any arising under Colorado law for which Colorado provides a longer limitations period than two years.

■■ Siegel also contends that application of Colorado's two-year statute of limitations to actions arising under the EPAA and ESA would be inconsistent with the federal policies underlying the statutes because effective enforcement of the statutes requires a longer limitations period. Siegel's argument must be rejected in light of the holding of this Court in *Johnson Oil Co. v. United States Department of Energy, supra,* that Wyoming's "two-year statute [of limitations] is certainly not inconsistent with national energy policy...."

### III

Siegel also contends that the district court erred in holding that the limitations period accrued either in March 1974, when Gulf first informed Siegel that Acorn would be its substitute supplier, or May 1974,

when Siegel apparently first purchased gasoline from Acorn. Siegel contends that Gulf's alleged violations of the Allocation Regulations form a continuing violation; Siegel argues that each month Gulf had a new obligation to supply Siegel and each month Gulf violated that obligation.

■■■ We do not agree. It is a legal commonplace that a cause of action accrues when a defendant commits an act that injures the plaintiff. *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77 (1971). At oral argument Siegel conceded that Gulf responded to its protests of March 1974 and July 1975 in "absolutely unwavering" terms that Gulf would not resume supplying Siegel and that Gulf's decision "was not going to be modified...." Because Gulf's decision was final at the time it designated Acorn as Siegel's substitute supplier, Siegel's injury was a direct result of Gulf's designation of Acorn and Siegel's cause of action accrued at that time. *David Orgell,*

*Inc. v. Geary's Stores, Inc.,* 640 F.2d 936 (9th Cir.), *cert. denied,* 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981); *In re Multidistrict Vehicle Air Pollution,* 591 F.2d 68 (9th Cir.1979), *cert. denied,* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1980). Moreover, the district court properly found that this Court, when confronted with an analogous situation in *Shell Oil Co. v. Nelson Oil Co.,* 627 F.2d 228, 236 (Em.App.), *cert. denied,* 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980), rejected the continuing violation concept under the DOE regulations.

Accordingly, we conclude that the district court correctly construed the applicable law and we affirm the judgment it entered.