**CPI CRUDE, INCORPORATED,**
Plaintiff-Appellant,

v.

**Thomas D. COFFMAN, et al.,**
Defendants-Appellees.

No. 5–114.

Temporary Emergency Court of Appeals.

Argued June 3, 1985.

Decided Oct. 1, 1985.

Rehearing and Rehearing En Banc Denied Oct. 31, 1985.

John B. Rizo, Jay Allen Chaffee, CPI Crude, Inc., Houston, Tex., Gerald W. Haddock, Fort Worth, Tex., for plaintiff-appellant.

Thomas W. Reavley, Scott, Douglas & Keeton, Austin, Tex., Kenneth M. Stillman, Randall C. Grasso, Robertson & Stensrud, Dallas, Tex., Carl W. Parker, Lang, Parker, Doyle & Cichowski, Port Arthur, Tex., Craig M. Daugherty, Sammons, Parker & Daugherty, Tyler, Tex., Bill C. Hunter, Hunter, Vineyard Drake & Miller, Dallas, Tex., for defendants-appellees.

Before CHRISTENSEN, ESTES and LACEY, Judges.

LACEY, Judge.

Before the court is an appeal from the decision of the district court granting summary judgment in favor of defendants based on a finding that the Texas statute of limitations had run on plaintiff's claim prior to the filing of the original complaint on June 27, 1983. Plaintiff contends that the district court failed to apply the proper analysis in determining what analogous state statute of limitations applies to this action under § 210 of the Economic Stabilization Act, as amended, 12 U.S.C. § 1904 note (1980); that the district court applied the wrong statute of limitations; that the trial court erred in finding the amended statute does not apply to pre-existing causes of action; that the district court misapplied the test for accrual of a federal cause of action; and that the district court erred in failing to find an issue of fact existed based on plaintiff's claim of fraudulent concealment. Defendants assert the propriety of the district court decision in all respects.

## THE FACTS

Except for those relating to the claim of fraudulent concealment, the facts are not significantly in dispute. Plaintiff CPI Crude, Inc. (CPI) is a Texas corporation, with its principal place of business in that state, which purchased oil produced from the Yahweh Farm property in Fayette County, Texas. Defendants Coffman, Lynn and Webster own a royalty interest in the Yahweh Farm property. Defendants Thomas, Treischman and Chafin & Hedges Petroleum Company were dismissed from the action for plaintiff's failure to prosecute as to them. The balance of the defendants are working interest owners in the Yahweh property.

Under the Department of Energy (DOE) Mandatory Petroleum Price and Allocation Regulations in effect prior to January 28, 1981, defendants were "producers" of crude oil. 10 C.F.R. § 212.31 (1980). As such they were subject to the mandatory pricing regulations of 10 C.F.R. part 212 subpart D (1980), and the certification requirements of 10 C.F.R. § 212.131 (1980). The regulations provided that "... no producer may charge a price higher than the

lower tier ceiling price for any first sale of domestic crude oil", 10 C.F.R. § 212.73(a) (1980), and "[n]o firm may sell domestic crude oil unless it provides the certification required by this section", 10 C.F.R. § 212.-131(c) (1980). To charge a higher price, the producer was obliged to show that the crude qualified for the higher price under one of the regulatory exceptions, and the producer was to certify to the purchaser the proper regulatory category of the crude within two months of the sale.

In December 1978 defendants made their first sale of crude oil from the Yahweh Farms property. This oil was sold from the A-1 well and was certified and sold to CPI as "upper tier" crude. In early 1979 defendants began selling crude from the Yahweh Farms B-2 and C-3 wells to CPI at the "upper tier" price. These sales were made pursuant to written division order contracts, executed by each defendant, which authorized CPI's purchase of the oil at "the price being posted or paid ... at the time of such delivery" [Record at 6].

Effective June 1, 1979, DOE regulations were amended to permit a new category of crude oil, exempt from price controls. "[N]ewly discovered crude oil", that is, domestic crude produced from a property from which no crude was produced in calendar year 1978, was exempt from the pricing regulations, 10 C.F.R. § 212.79 and § 212.79(b) (1980).

> "Property" means the right to produce domestic crude oil, which arises from a lease or from a fee interest. A producer may treat as a separate property each separate and distinct producing reservoir subject to the same right to produce crude oil, provided that such reservoir is recognized by the appropriate governmental regulatory authority as a producing formation that is separate and distinct from, and not in communication with, any other producing formation.

10 C.F.R. § 212.72 (1980). Election to treat separate formations as separate properties is irrevocable unless production becomes commingled or the formations are unitized. FEA Ruling 1977-2, 42 F.R. 4409 (January 25, 1977). The Oil and Gas Lease covering the Yahweh Farms property provides that the lease covers the specific (metes and bounds) property and the right to produce extends to the reservoir known as the "Austin Chalk". *See* Lease, Record on Appeal, Vol. I, Tab 1, at p. 2.

On June 28, 1979, the Yahweh Farms property was recertified as "newly discovered" through filing for the B-2 and C-3 wells. On August 24 and 27, 1979, the A-1 and D-4 wells were, respectively, recertified as "newly discovered". These recertifications increased the price payable for oil produced from these wells retroactively to June 1, 1979.

CPI challenged the recertification of the A-1 well as its records reflected a sale in 1978, which would have disqualified that well from unregulated pricing.

In response to the challenge, plaintiff was provided with an opinion letter dated November 26, 1979, from the Dallas law firm of Thompson & Knight, Esqs., which concluded that the A-1 well could be recertified as "newly discovered". This conclusion was based on information provided in a letter by Don Crow, Vice President of Field Operations for Chafin & Hedges Petroleum Company to the effect that the 1978 production from the A-1 well was from the "Buda" formation. That well later became blocked, and the "Buda" formation was sealed off. The well was then completed in the "Austin Chalk" formation. According to Chafin & Hedges, the Texas Railroad Commission recognizes that these two formations are separate reservoirs not in communication with each other. Plaintiff asserts that "[a]t the time [it] received the opinion letter from Thompson & Knight, it had no reason to know of the fraudulent nature of the information underlying the opinion letter."

However, from 1978 on, all production from this lease came from Austin Chalk, and this fact was a matter of public record in early 1979. *See* Producers Monthly Report of Oil Wells, Record on Appeal, Vol. III, Tab 36, Report for December, dated March 1, 1979. Nevertheless, plaintiff took no further action until early in 1983 when it conducted a detailed review of its purchase

records of newly discovered crude "in response to rampant rumors of intentional miscertification of newly discovered crude oil". *Id.* Upon reevaluation it determined that the Thompson & Knight opinion letter was worthless because of the fraudulent information provided by defendants to the firm.

Plaintiff demanded repayment of the alleged $2,582,182.55 paid out in overcharges. CPI had made its first alleged overpayment on July 27, 1979, with respect to overcharges relating to the B–2 and C–3 wells. The first alleged overcharge paid on the recertified A–1 and D–4 crude was made on September 20, 1979.

Upon defendants' refusal to pay, plaintiff commenced this action on July 27, 1983, seeking relief under §§ 210 and 211 of the Economic Stabilization Act (ESA) of 1970, as amended, 12 U.S.C. § 1904 note, as incorporated and carried forward by § 5(a)(1) of the Emergency Petroleum Allocation Act (EPAA) of 1973, 15 U.S.C. § 754(a)(1). The complaint also asserts a claim for fraudulent concealment. Sometime in January 1984 plaintiff filed an amended complaint which added a state law claim for breach of the division order contracts in the jurisdictional paragraph and the prayer for relief. No separate count specifying the facts alleged in support of the state law claim was set forth. No additional facts were added with respect to the claim of fraudulent concealment. With respect to the fraud, the allegations of the original complaint and the amended complaint merely assert that a 1983 review of plaintiff's records resulted in the new conclusion that the opinion letter was based on fraudulent information. The Chaffee affidavit merely repeats the allegations of the complaint on this issue without adding flesh to the conclusions. *See* Affidavit of Jay Allen Chaffee, Record on Appeal, Vol. I, Tab 10, at ¶¶ 13 and 14.

## THE DISTRICT COURT DECISION

On May 14, 1984, the district court filed an opinion and order disposing of the then pending motion for summary judgment on the statute of limitations issue which had been joined by all defendants. The court first dismissed the complaint as to defendants Thomas, Treischman and Chafin & Hedges for lack of prosecution. Pursuant to Southern District of Texas Local Rule 13(b), this dismissal was entered with prejudice. Plaintiff has not appealed this portion of the May 14, 1984, order.

The district court then noted that this action was based on alleged violations of § 210 of the ESA, that it was a private overcharge action for recovery of actual and treble damages relating to the sale of crude oil, and that a pendent state law claim for breach of contract was also raised. Relying on the two-part test set forth in *Ashland Oil Co. of Calif. v. Union Oil Co. of Calif.*, 567 F.2d 984 (Temp.Emer. Ct.App.1977), *cert. denied*, 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978), the court held that the most analogous statute of limitations which was not inconsistent with federal policy was the two-year limitation found in former Texas Article 5526(4). The court also found that the causes of action accrued on or about July 27, 1979, the date of the first alleged overcharge, or at the latest on August 24, 1979, when the latter two wells were recertified. In light of that finding, the court concluded that the amended Texas statute of limitations did not apply, as that four-year statute applied to actions which accrued after August 27, 1979. The plaintiff's fraudulent concealment tolling argument was disposed of in a footnote which noted the argument failed to overcome the language of *Gulf Oil Corp. v. Dyke*, 734 F.2d 797 (Temp.Emer. Ct.App.1984), *cert. denied*, — U.S. —, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984), and *Fleetwing Corp. v. Mobil Oil Corp.*, 726 F.2d 768 (Temp.Emer.Ct.App.1983). The court concluded that the suit was filed well beyond the two-year limitation and that defendants were entitled to judgment as a matter of law.

## DISCUSSION

a) Did the district court fail to follow the statute of limitations analysis prescribed by this court?

■ This court has long held that because the ESA and EPAA contain no specific statute of limitations, the most closely analogous state statute of limitations must be applied to causes of action arising under these acts. *Gulf Oil Corp. v. Dyke, supra,* at 808. *See also Ashland Oil Co. of Calif. v. Union Oil Co. of Calif., supra,* at 989; *Colorado Petroleum Products Co. v. Husky Oil Co.,* 646 F.2d 555, 557 (Temp. Emer.Ct.App.1981). However, the state statute of limitations will be applied to the federal action only where the state statute is consistent with the federal policy involved. *Siegel Oil Co. v. Gulf Oil Corp.,* 701 F.2d 149, 151 (Temp.Emer.Ct.App. 1983); . *Ashland Oil, supra,* at 989; *cf. Wilson v. Garcia,* — U.S. —, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (statute of limitations for personal injury actions is most analogous statute to be applied in § 1983 civil rights actions).

Plaintiff first contends that the district court failed to properly apply this two-step analysis in that the court found only a two-year limitation period could be applied in this action as any longer period would be inconsistent with federal policy. The argument continues that "... the district court did not address the threshold question concerning which Texas statute of limitations should by analogy apply ..." to this claim. Pltf. brief at 7. This contention is without merit. While the district court opinion may not be entirely clear as to its reasoning behind the selection of the two-year statute, it is apparent that the court considered the arguments of both parties. The court concluded that

> ... none of the state-based limitations arguments are dispositive of the limitations issue. We must look to two additional considerations in order to reach a correct resolution. First, we must apply the standard of "analogous statutes" rather than look to any standard of "comparable actions". *Johnson Oil Co. v. Department of Energy,* 690 F.2d 191 (Em.App.1982). In this regard, a close scrutiny of the parties' arguments shows that these arguments rest much more on "comparable (state) actions" than they do on a consideration of truly "analogous

statutes". Second, in determining the applicable limitations statute, the Court must examine which statute would be consistent (or "not inconsistent") with the underlying federal policies of the ESA. *Ashland Oil, supra,* at 989. While state law may be a primary guide in this area, it is not an exclusive guide, and federal courts must assure an importation of state statutes which will not frustrate the implementation of national policies.

District Court Memorandum Opinion and Order of May 14, 1984, Record on Appeal, Vol. I, Tab 14, at pp. 3–4. It is plain that the district court both cited and applied the appropriate standard on this issue.

   b) Did the district court apply the wrong Texas statute of limitations?

Defendants' motions for summary judgment were based on their claim that CPI's cause of action was time-barred by the two-year statute of limitations contained in Tex.Rev.Civ.Stat.Ann. Art. 5526 (Vernon 1958). In pertinent part that statute provides:

> Art. 5526. Actions to be commenced in two years
>
> There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
>
> .    .    .    .    .
>
> (4) Actions for debt where the indebtedness is not evidenced by a contract in writing.

Plaintiff contends that, because its payments to defendants were made pursuant to the written division order contracts, the cause of action under ESA is most closely analogous to an action for debt evidenced by or founded upon a written contract. Such actions are governed by a four-year statute of limitations. Tex.Rev.Civ.Stat. Ann. Art. 5527(1). Plaintiff cites error in the district court's failure to apply Art. 5527(1) in light of the liberal construction of the statutory language "evidenced by or founded upon a written contract" given in

the Texas courts. *E.g., Kiel v. City of Houston,* 558 S.W.2d 69, 71 (Tex.Civ.App. 1977); *First State Bank of Green's Bayou v. Tanner,* 495 S.W.2d 267 (Tex.Civ.App. 1973).

While the district court must apply the most analogous state statute of limitations in effect at the time the cause of action arose, *Fleetwing Corp. v. Mobil Oil Corp., supra,* at 770, the characterization of the federal cause of action, for purposes of drawing that analogy, turns on federal—not state—law. *Ashland Oil, supra,* at 990; *Moviecolor Ltd. v. Eastman Kodak Co.,* 288 F.2d 80, 83 (2d Cir.1961), *cert. denied,* 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26 (1961). An ESA overcharge action has been characterized as an action for liability created by statute. *See, e.g., Ashland Oil, supra,* at 990–91; *Johnson Oil Co., Inc. v. DOE,* 690 F.2d 191, 196 (Temp.Emer.Ct. App.1982); *Siegel Oil Co. v. Gulf Oil Corp., supra,* at 152. That there may also be a cause of action for breach of contract arising from the same set of facts giving rise to the overcharge claim does not impact upon the characterization of the federal claim for statute of limitations purposes. "The dominant claim in this case is for violation of the pricing regulations." *Johnson Oil, supra,* at 196.[1]

The district court's application of Art. 5526(4), setting a two-year limitation of actions for debt not evidenced by a written contract as the most analogous state statute in effect at the time this action for overcharges accrued, was correct. The statute has been consistently applied to actions for statutory liabilities, whether created by state or federal statute. *See Green v. Wilkinson,* 234 F.2d 120 (5th Cir. 1956) (action for damages under federal antitrust laws); *McGuire v. Baker,* 421 F.2d 895 (5th Cir.), *cert. denied,* 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47 (1970) (civil rights under 42 U.S.C. § 1983);[2] *Page v.*

*U.S. Industries,* 556 F.2d 346 (5th Cir. 1977), *cert. denied,* 434 U.S. 1045, 98 S.Ct. 890, 54 L.Ed.2d 796 (1978) (42 U.S.C. § 1981 claim). *See also Rose v. First State Bank,* 122 Tex. 298, 59 S.W.2d 810 (1933).

c) Did the trial court err in determining that the amended statute does not apply to pre-existing causes of action?

Effective August 27, 1979, the Texas Legislature amended Articles 5526(4) and 5527(1) to provide a single limitations period for all debt actions whether evidenced by a written contract or not. The new act provides for a four-year limitations period for all debt actions. Tex.Rev.Civ.Stat. Art. 5527(1), as amended by Acts, 1979, 66th Leg., p. 1769, ch. 716, ¶ 2, eff. Aug. 27, 1979. Plaintiff contends that, as the statute of limitations had not run on its cause of action at the time the amendment became effective, this action should be governed by the four-year statute. Citing several Texas cases, plaintiff argues that when a statute of limitations is amended to extend the time within which an aggrieved party may commence an action, the new statute will apply to any pre-existing action which is not already time-barred.

The district court found, on the basis of the undisputed facts, that plaintiff's cause of action accrued on July 20, 1979, the date of the first alleged overcharge. *See Gulf Oil, supra,* at 809, and *Fleetwing, supra,* at 770. As noted above, the district court is compelled to apply the most analogous statute of limitations in effect *at the time the cause of action arose. Id.* Presuming the district court's finding to be correct with respect to accrual on July 20, 1979, the amended statute cannot be utilized in this action. Furthermore, plaintiff's arguments for retroactive application of the amended statute are refuted by the reasoning in *Doran v. Compton,* 645 F.2d 440 (5th Cir.1981), where a federal court

---

1. Defendants do not accept plaintiff's argument that the division orders are "contracts". They contend that as the orders contain no promise or executory obligation running to defendants, the defendants could not breach. It is not necessary to resolve this issue to make a determination on the statute of limitations issue as to the

ESA claim. A protective appeal has been filed in the Fifth Circuit on the state law claims.

2. As previously noted, the Supreme Court recently ruled that § 1983 actions are controlled by the state statute of limitations for personal injury actions. *Wilson v. Garcia, supra,* at 1947.

considered whether the amendment of a Texas statute of limitations in medical malpractice cases should be retroactively applied. In that action the Fifth Circuit reviewed the pertinent Texas case law and concluded that such amendments were to apply only prospectively in the absence of some clear indication of legislative intent for retroactivity. There is nothing in the amended statute at issue here which gives a clear indication of the legislative intent for retroactive application.

d) Did the district court apply the wrong test for accrual?

■ As plaintiff notes

CPI suffered no damage as a result of defendants' miscertifications, and CPI could not and does not seek any judicial relief from these miscertifications. CPI was damaged, and does seek relief, as a result of the overcharges exacted by defendants from CPI.

Plaintiff's brief at p. 19. Citing to *Shell Oil Co. v. Nelson Oil Co.*, 627 F.2d 228 (Temp.Emer.Ct.App.), *cert. denied*, 449 U.S. 1022, 101 S.Ct. 590, 66 L.Ed.2d 484 (1980); *Siegel, supra; Johnson, supra;* and *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765 (Temp.Emer.Ct. App.1983), plaintiff argues that "[t]he decisions of this Court hold that a cause of action under ESA accrues when the plaintiff is damaged." Plaintiff's brief at p. 19. This is an overly broad statement of the law. In an overcharge action, the plaintiff's cause of action accrues at the time the overcharge occurs. *Fleetwing, supra,* at 770.

Plaintiff relies on the remand in *Johnson* for the proposition that each alleged overcharge constitutes a separate cause of action for purposes of the statute of limitations. In *Johnson* appellant challenged the application of a ten-year statute of limitations to the overcharge action. The Temporary Emergency Court of Appeals reversed and remanded, finding

[t]he dominant claim in this case is for violation of the pricing regulations. Moreover, the two-year statute is certainly not inconsistent with national energy policy seeking to wind up regulation of the oil industry—"temporary" *ab initio.*

We therefore reverse the trial court's ruling on this issue and remand to the district court in order that it may limit Southwestern's recovery on pricing overcharges to *those occurring on or after March 15, 1977, two years before its counterclaim was filed.*

*Johnson* at 196 (emphasis added). *See also U.S. Oil v. Koch Refining Co.*, 497 F.Supp. 1125, 1131 (E.D.Wis.1980) (each purchase and concurrent alleged overcharge created a separate cause of action). Whatever support this remand may lend to plaintiff's contention that each overcharge constitutes a separate cause of action has been seriously undermined by subsequent holdings of this court.

In *Siegel Oil Co. v. Gulf Oil Corp.*, 701 F.2d 149 (Temp.Emer.Ct.App.1983), an action for damages resulting from violations of the mandatory petroleum allocation regulations bearing on substitute suppliers, this court held that such a cause of action accrued upon designation of the substitute supplier, as the alleged injury was a direct result of the designation. Siegel had contended that Gulf's action constituted a continuing violation in that each month Gulf had a new obligation to supply which, each month, it violated. We rejected that argument noting "[i]t is a legal commonplace that a cause of action accrues when a defendant commits an act that injures the plaintiff." *Siegel, supra,* at 153. This court rejected the continuing violation argument in that action. *Id. See also Shell Oil v. Nelson, supra.*

In an action by a gasoline retailer against the wholesaler for recovery of overcharges based on the wholesaler's misclassification of the retailer for pricing purposes, this court again rejected the continuing violation theory, holding that the action accrued upon misclassification of the retailer. *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765 (Temp.Emer.Ct. App.1983). In differentiating that case from *Johnson,* we noted ·

If the case before us was, as was *Johnson, supra,* a "plain" overcharge case, we would find appellant's position acceptable. A fundamental distinction exists, however, in that the overcharges in this case resulted from Gulf placing Western Mountain in an improper class of purchaser, and calculating its May 15, 1973, transaction prices based on that improper classification.... As the district court correctly found, all of the requirements for accrual of appellant's cause of action under the facts of this case had been met on January 1, 1974, the date the overcharging commenced as a result of the misclassification.

*Western, supra,* at 768. Similarly, in an action by a nonbranded independent marketer of branded gasoline for overcharges resulting from a wrongful classification by the supplier, we held that the purchaser's cause of action accrued on the date the purchaser is first overcharged as a result of the misclassification. *Fleetwing, supra,* at 770. *See also Lerner v. Atlantic Richfield Co.,* 731 F.2d 898, 901 (Temp.Emer.Ct. App.1984) (rejecting continuing violation theory because claims were "based solely upon the same conduct of Atlantic, the February, 1974, change in classification and thus of 7/10¢ in price"). Most recently, in a private overcharge action by an indirect purchaser this court held "... where any overcharges incurred resulted from an initial improper base price, the statute of limitations begins to run from the date of the first overcharge." *Gulf Oil Corp. v. Dyke,* 734 F.2d 797, 809 (Temp. Emer.Ct.App.), *cert. denied,* — U.S. —, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984).

While *Johnson* lends some support to plaintiff's contention that in a plain overcharge action each alleged overcharge should constitute a separate cause of action, this court was not squarely faced with that issue in *Johnson.* The conclusory language in the directions to the district court upon remand should not be broadly construed to constitute a holding that each overcharge amounts to a separate cause of action.

█ The facts of this case command affirmance of the trial court's determination that CPI's cause of action accrued on the date of the first overcharge on July 27, 1979.

At all relevant times plaintiff knew that crude oil had been produced from the Yahweh Farms site in 1978. As early as March 1979 it was a matter of public record that all four wells drew from the same reservoir. *See* Producers Monthly Reports, Record at Vol. III, Tab 36. Therefore, Yahweh Farms constituted one property for purposes of recertification. In light of this, plaintiff could have or should have known that none of the Yahweh Farms crude was eligible for recertification as "newly discovered" because of the 1978 production from the D–1 well. Diligent inquiry would have revealed this even before the July overcharge was paid.

e) Did the district court err in failing to find fraudulent concealment tolled the running of the statute of limitations?

█ The equitable tolling doctrine is read into every federal statute of limitations, as well as state statutes of limitations which are adopted by federal law. *Sperry v. Barggren,* 523 F.2d 708, 710 (7th Cir.1975). When fraud is concealed, or is of such a nature that it conceals itself, the statute of limitations is tolled until such time as the plaintiff obtains knowledge of the fraud, or with due diligence should have obtained knowledge of the fraud. *Id.* Plaintiff has failed to put before the court, at trial or on appeal, any facts to support its claim for fraudulent concealment. *See* discussion at p. 4, *supra.* The district court did not err in refusing to find the statute equitably tolled given the paucity of the record in this regard. Given that plaintiff challenged the recertification as early as November 1979 and that "the statutory period ... [does] not await appellant's leisurely discovery of the full details of the alleged scheme;" *Berry Petroleum v. Adams & Peck,* 518 F.2d 402, 410 (2d Cir.1975) (quoting *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970)); *see also Robertson v. Seidman & Seidman,* 609 F.2d 583, 587 (2d Cir.1979), any period of tolling would have expired no later than November 26,

1979, when plaintiff received the opinion letter it believed to be based on false information.

## CONCLUSION

Accordingly, the judgment of the district court will be affirmed.