**Paul LERNER d/b/a Lerner Oil Co.,**
**Plaintiff-Appellant,**

v.

**ATLANTIC RICHFIELD CO.,**
**Defendant-Appellee.**

**No. 9–78.**

Temporary Emergency Court of Appeals.

Argued Dec. 6, 1983.

Decided March 13, 1984.

Rehearing and Rehearing En Banc Denied April 10, 1984.

San Francisco, Cal., on the brief for plaintiff-appellant Lerner.

F. Bruce Dodge (argued) and Samuel R. Miller, Stephen J. Schrader of Morrison & Foerster, San Francisco, Cal., and Richard C. Morse and Richard A. Stephens, Los Angeles, Cal., for defendant-appellee Atlantic Richfield Co.

Before JAMESON, DUNIWAY and McNICHOLS, Judges.

DUNIWAY, Judge:

Lerner appeals from two summary judgments which, together, disposed of the entire action. We affirm.

I.  *The proceedings in the trial court.*

The complaint was filed on July 20, 1979, and an amended complaint on November 15, 1979. There were two claims for relief alleged, but the second was later dismissed pursuant to a stipulation. Atlantic Richfield moved for summary judgment, which the court at first denied but later granted in part. We denied leave to appeal under 28 U.S.C. § 1292(b). *Lerner v. Atlantic Richfield Company,* Em.App., 1982, 690 F.2d 203. Then the trial court granted a second motion for summary judgment, which, together with the first judgment, disposed of the entire action.

The clerk's record in this case contains 3,280 legal-sized pages, and the record shows (p. 1317) that Lerner took more than 50 depositions of Atlantic employees and former employees, and Atlantic says that it produced thousands of pages of documents at Lerner's request. As we will see, most, and perhaps all of this burdensome and expensive procedure was unnecessary.

II.  *The facts.*

Atlantic's undisputed affidavits show the following: Atlantic is a major refiner and seller of automotive gasoline. In the early 1970s, Atlantic sold gasoline under a "Rocket" brand, and Lerner was one of a number of wholesale buyer-resellers of "Rocket" gasoline. In March, 1972, Atlantic decided to discontinue sales of "Rocket" products effective September 15, 1972.

James S. Williams (argued) and Michael H. Bonner of Froneberger, Bonner & Zeff,

Lerner sued *Atlantic*, and the suit was settled and dismissed on February 1, 1973.

Under the settlement agreement, Atlantic agreed to sell unbranded gasoline to Lerner for 24 months or until Lerner bought 88,800,000 gallons, whichever came first. For the first year, the price was to be 12.9¢ per gallon for "regular" and 14.9¢ for "premium" gasoline. For the second year, there was an escalation clause. On May 15, 1973, Lerner was paying 7/10¢ less per gallon than other former "Rocket" buyers purchasing the same gasoline at the same Atlantic terminal. On February 1, 1974, Atlantic raised its prices to Lerner by 7/10¢, charging Lerner the same prices as it charged all other former wholesale buyers of "Rocket" gasoline.

The first and only remaining claim stated in Lerner's amended complaint charged the foregoing action as its sole basis.

It is stated, but without facts, in paragraph 5 and in the prayer, that Atlantic has violated the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 *et seq.,* and the regulations under it, 10 C.F.R. §§ 210.62, 211.9, and Part 212, Subpart E (10 C.F.R. § 212.81 *et seq.*). Paragraphs 7 through 9 read:

> 7. On May 15, 1973, Lerner paid to ARCO prices of 12.9 cents per gallon for regular and 14.9 cents per gallon for premium motor gasolines purchased at ARCO's Hynes Terminal. On May 15, 1973, other distributors purchasing from ARCO, whom ARCO referred to as "ex-Rocket" distributors, purchased regular motor gasoline at Hynes at 13.6 cents per gallon and premium at 15.6 cents per gallon, a price of .7 of a cent per gallon higher than the price charged to Lerner.
>
> 8. The prices charged to Lerner by ARCO as of May 15, 1973, were based upon permanent and customary business factors and practices recognized by ARCO and Lerner including, but not limited to, Lerner's high volume purchases.
>
> 9. Beginning on February 1, 1974, and continuing to the present, ARCO has violated the EPAA and the rules and regulations of the FEA and DOE by

eliminating the .7 cent per gallon price differential between Lerner and the "ex-Rocket" distributors, by charging Lerner the same prices charged to those distributors, and by effectively treating Lerner as belonging to a class of purchaser to which it did not belong as of May 15, 1973, and does not belong to now.

(Clerk's record pp. 168–167.) The foregoing is the only language in the first claim of the amended complaint that states what Atlantic did that violates the law. It has not been amended.

### III. *The trial court's decisions.*

Lerner succeeded in persuading the trial court that it really had four claims for relief—a "class of purchaser" claim and a "base price" claim, which the court disposed of in its first judgment, and a "willful overcharge" claim under § 210(b) of the Economic Stabilization Act, 12 U.S.C. § 1904 note, and a "normal business" practice claim under 10 C.F.R. 210.62, which the court disposed of in its second judgment.

Not so. The only claim is that Atlantic misclassified Lerner on February 1, 1974, and accordingly raised its prices by 7/10¢ to the same prices that it was charging other former "Rocket" dealers. The conduct described may violate more than one statute or provision of the regulations, but it is still one claim, and it is still barred by the statute of limitations.

### IV. *The statutes of limitations.*

The parties are agreed that the applicable statutes of limitation are California Code of Civil Procedure sections 338(1) (three years) and 340(1) (one year), the latter applying to claims for treble damages for "willful" breach of the statute and regulations. The trial judge held that these statutes began to run, as to the "class of purchaser" and "base price" claims on February 1, 1974. The action was filed on November 15, 1979, more than five years after the event of which Lerner complains. Thus the two "claims" are barred.

Our decision in *Western Mountain Oil, Inc. v. Gulf Oil Corp.,* Em.App., 726 F.2d

765 (1983), is squarely in point. There, as here, the plaintiff argued that each sale at the unlawful price created a new cause of action. So did Lerner, appearing as amicus curiae. We flatly rejected that argument, since plaintiff's claim was not a "plain" overcharge case. In accord are our decisions in *Fleetwing Corp. v. Mobil Oil Corp.*, Em.App., 1983, 726 F.2d 768, *Siegel Oil Co. v. Gulf Oil Corp.*, Em.App., 1983, 701 F.2d 149, and *Shell Oil Co. v. Nelson Oil Co., Inc.*, Em.App., 1980, 627 F.2d 228.

The reasoning of these cases is equally applicable to what Lerner's counsel is pleased to call the "willful overcharge" and "normal business practice" claims. No matter what they are called, they, like the first two so-called claims, are based solely upon the same conduct of Atlantic, the February, 1974, change in classification and thus of $^7/_{10}$¢ in price. That is the "challenged conduct." *See Western Mountain*, 726 F.2d at 767, *Shell Oil*, 627 F.2d at 236. We distinguished *Johnson Oil Co., Inc. v. U.S. Dept. of Energy*, Em.App., 1982, 690 F.2d 191, in *Western Mountain*, 726 F.2d at 767, 768. What we said there applies equally here. Moreover, our examination of *Johnson Oil* shows that the question we decide here was neither raised nor considered in that case. *See* 690 F.2d at 196.

Because Lerner's four "claims" are really one claim, resting on one bit of "challenged conduct," and because that claim is barred, we need not consider the additional reasons that the trial judge gave in support of his judgment. We express no opinion on them.

Affirmed.