KICKAPOO OIL COMPANY, INCOR-
PORATED, Plaintiff-Appellant,

v.

CLARK OIL & REFINING CORPORA-
TION, Defendant-Appellee.

No. 7–15.

Temporary Emergency Court of Appeals.

Argued Sept. 12, 1985.

Decided Dec. 19, 1985.

Thomas J. Hamilton and Steven Schaars, Collier, Shannon, Rill & Scott, Washington, D.C., were on brief, for plaintiff-appellant.

Wayne E. Babler, Jr. and Nancy K. Peterson, Quarles & Brady, Milwaukee, Wis., were on brief, for defendant-appellee.

Before GIGNOUX, PECK and BONSAL, Judges.

JOHN W. PECK, Judge.

In September 1978, Kickapoo Oil Company, Inc. ("Kickapoo") filed this action against Clark Oil and Refining Corporation ("Clark") in the United States District Court for the Western District of Wisconsin. Kickapoo is an unbranded independent marketer of motor gasoline and other petroleum products; Clark is a refiner of motor gasoline and other petroleum products. In the complaint, Kickapoo alleged that from November 1, 1973 through June 30, 1976, Clark overcharged Kickapoo on purchases of motor gasoline in violation of the Mandatory Petroleum Allocation and Price Regulations, 10 C.F.R. Parts 211 and 212, promulgated pursuant to the Emergency Petroleum Allocation Act, 15 U.S.C. §§ 751 *et seq.* Kickapoo sought to recover under § 210 of the Economic Stabilization Act[1] from Clark the full amount of the alleged overcharges, together with interest, incidental and consequential damages, and attorney fees. Kickapoo alleged that the overcharges were attributable to:

(i) Clark's failure to place Kickapoo in the same class of purchaser as similar purchasers from Clark to which Clark has charged comparable prices for comparable product pursuant to customary price differential between those purchasers and other purchasers from Clark; (ii) Clark's failure to preserve customary price differentials which existed on and before May 15, 1973 between Kickapoo and dissimilar purchasers of motor gasoline from Clark; (iii) Clark's improper application of the May 15, 1973 transaction which it used in computing the

---

1. The Economic Stabilization Act of 1970, 12 U.S.C. § 1904 note, is incorporated by reference in § 5(a) of the Emergency Petroleum Allocation Act, 15 U.S.C. § 754(a).

weighted average price for the motor gasoline which it sold to Kickapoo. Complaint, ¶ 15. Kickapoo alleged that the improper calculations of the maximum allowable prices resulted in an overcharge of approximately 2.75 cents per gallon.

During the course of discovery, Clark served Kickapoo with interrogatories in November 1979, asking in Interrogatory No. 14:

> Identify separately each and every purchase of motor gasoline by Kickapoo from Clark for which plaintiff contends Clark charged a price in excess of the maximum allowable price, stating ... (f) the amount of overcharges in cents per gallon, and (g) how the overcharge amount was determined by plaintiff.

Kickapoo responded that it was unable to fully answer this interrogatory until discovery had been provided by Clark. In Interrogatory No. 31, Clark asked:

> Describe all facts upon which is based the allegation that the excess charged by Clark was 2.75 cents per gallon as alleged in paragraph 14 of the Complaint, and identify all documents and other sources of information upon which such allegation is based.

Kickapoo responded that the bases for the allegations were fully set forth in the complaint and that further details would be given after discovery was provided by Clark.

In the second set of interrogatories, propounded by Clark to Kickapoo in February 1981, Kickapoo identified Peter Johnson and Cliff Lawrence as persons having personal or expert knowledge of how Kickapoo arrived at the determination that the average overcharge was 2.75 cents.[2] (Interrogatories II-1–2.) Throughout its responses to the second set of interrogatories, Kickapoo reiterated that it was unable to answer until further discovery, and would supplement its answers accordingly. Interrogatory II-9 asked:

Identify each expert whom you expect to call at trial as a witness and with respect to each such expert state:

> A. The subject matter upon which such expert is expected to testify; and
>
> B. The substance of the facts and opinions about which such expert is expected to testify.

Kickapoo responded that it would supplement the answer when the information became available.

On September 14, 1982, at a pretrial conference, the court ordered:

> Both parties are to proceed with the conducting of formal discovery. Discovery is tentatively scheduled for completion by February 1, 1983, and the case is tentatively scheduled for trial ... on April 11, 1983.

In November 1982, Clark asked in a third set of interrogatories about Kickapoo's contentions, theories and expert opinions. Interrogatories III-15–18 and Kickapoo's responses are set forth below:

*INTERROGATORY NO. III-15:*

> For each month between August 20, 1973 and January 27, 1981, set forth separately for each class of purchaser, what plaintiff contends was defendant's maximum lawful selling price to such class of purchaser for such month. If plaintiff has alternate theories or contentions, which it intends to present at trial, answer this interrogatory separately for each such theory or contention and describe the differences in the methods used in deriving such maximum lawful selling prices.

*RESPONSE TO INTERROGATORY NO. III-15:*

> After Kickapoo has completed the computations, it will provide a response.

*INTERROGATORY NO. III-16:*

> Set forth what plaintiff contends are the proper weighted average selling prices for each class of purchaser of de-

---

**2.** In April 1979, a similar action was brought by Go-Tane Service Stations, Inc. against Clark, alleging similar overcharges by Clark as those alleged in the present action. The same counsel were involved in both cases. Peter Johnson's deposition was taken in connection with the *Go-Tane* proceedings.

fendant in transactions on May 15, 1973, or the last preceding date on which a transaction occurred if none on May 15, 1973, for purposes of plaintiff's calculation of defendant's maximum lawful selling prices to each such class of purchaser under the refiner price rule. If plaintiff has alternate theories or contentions which it intends to present at trial, answer this interrogatory separately for each such theory or contention and describe the differences in the methods used in deriving such weighted average selling prices.

*RESPONSE TO INTERROGATORY NO. III-16:*

After Kickapoo has completed its computations, it will provide a response.

*INTERROGATORY NO. III-17:*

State whether plaintiff will maintain at trial that defendant placed plaintiff in an improper class or purchaser, and, if so, identify all customers and all transactions (setting forth the product, grade, volume, and price paid) which will be used by plaintiff in determining the weighted average selling price to plaintiff's class of purchaser for purposes of plaintiff's calculation of defendant's maximum lawful selling price to plaintiff's class of purchaser.

*RESPONSE TO INTERROGATORY NO. III-17:*

Kickapoo will maintain at trial that Clark placed plaintiff in an improper class of purchaser. After Kickapoo has completed its computations, it will supplement its response.

*INTERROGATORY NO. III-18:*

State whether plaintiff intends to offer expert testimony at trial on any issues, and, if so, identify all such experts setting forth name, address, qualification, and each issue with respect to which he will testify as an expert.

*RESPONSE TO INTERROGATORY NO. III-18:*

Kickapoo has not determined whether an expert witness will testify during Kickapoo's presentation of this case and, accordingly, has not yet identified any expert for trial testimony.

In response to interrogatories propounded by Kickapoo, Clark stated that it used the following amounts in determining the maximum allowable price as it understood the Regulations with respect to purchases made by Kickapoo from Clark:

|           | Premium | Regular |
|-----------|---------|---------|
| Granville | .23080  | .21371  |
| Green Bay | .23180  | .21471  |

Clark also set forth its prices as they were posted on May 15, 1973, for the unbranded wholesale class of purchaser, the class in which Clark placed Kickapoo:

|           | Premium | Regular |
|-----------|---------|---------|
| Granville | .1700   | .1500   |
| Green Bay | .1710   | .1510   |

Clark admitted that its last sales of motor gasoline to a purchaser in the unbranded wholesale class of purchaser on or before May 15, 1973, excluding sales to Naph-Sol Refining Company, were as follows:

|           | Premium | Regular |
|-----------|---------|---------|
| Granville | .1535   | .1360   |
| Green Bay | .1556   | .1390   |

On November 30, 1982, a status conference was held, and the court ordered: "All formal discovery in this case is to be completed by February 28, 1983." On February 3, 1983, however, the court granted Kickapoo's motion for a stay pending a final decision by this court in *Mobil Oil Corp. v. DOE*, 728 F.2d 1477 (Temp.Emer. Ct.App.1983), *cert. denied*, — U.S. —, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984), in which the validity of the equal application/deemed recovery rule found at 10 C.F.R. § 242.83 was at issue. *Mobil* was decided on December 20, 1983. No further proceedings occurred in the instant action until November 21, 1984, when another status conference was held. Counsel for Kickapoo failed to appear; counsel for Clark was present. A status conference order provided that the case would be set for trial for the week beginning February 4, 1985 and that a final pretrial conference would be held on January 10, 1985.

At the final pretrial conference on January 10, Kickapoo waived its demand for a jury trial and requested that the trial be postponed until February 21, 1985. The court granted the continuance and ordered that Kickapoo would have 6¾ hours to present its case, exclusive of cross-examination. The court cautioned that it would disfavor any attempt by Kickapoo "to produce a witness who will introduce a computer printout purportedly summarizing all of the issues in the case."

On February 11, 1985, the court granted Clark's motion for an order enforcing the discovery cutoff date. Also on February 11, Kickapoo served a summary judgment motion and a motion in limine to admit overcharges, asking that the court admit into evidence a computer printout as a summary of overcharges. Clark opposed the admission of the computer printout and the court reserved the ruling until trial. On the same date, Kickapoo sent to Clark a letter which stated:

> As you may know, plaintiff Kickapoo Oil Co., Inc. has designated Peter A. Johnson to testify as its expert witness in the above-referenced proceeding. Kickapoo will make Mr. Johnson available for a deposition at a mutually agreeable time and location before the scheduled trial in this matter, if you so wish.

Clark responded by letter to Kickapoo:

> Your designation of Mr. Johnson and offer to make him available for deposition at a time and place agreeable to you is not in good faith, and, coming two years after discovery closed and just eight days before trial, is too late. Without the promised discovery materials, your offer is inadequate and meaningless.

On February 12, 1985, Kickapoo sent to Clark an overcharge summary for the period January 1974 through July 1976. The letter stated that "Kickapoo soon will provide Clark with information regarding overcharges for the period August 19, 1973 through December 31, 1973...."

On February 14, 1985, Kickapoo filed unverified supplemental responses to interrogatories. Kickapoo identified Peter Johnson as its expert witness, and stated that Johnson would testify that based upon Clark invoices and Clark Market Price Bulletins, during the period August 19, 1973 through July 1976, Clark overcharged Kickapoo $750,000. Kickapoo further stated that it reached this amount based upon the methodology approved in *Gulf Oil Corp. v. Dyke,* 734 F.2d 797 (Temp.Emer.Ct.App.), *cert. denied,* — U.S. —, 105 S.Ct. 173, 83 L.Ed.2d 108 (1984). In *Gulf Oil Corp. v. Dyke,* the weighted average price for a particular class of purchasers was determined by dividing the total revenue received from all sales of gasoline within a class of purchasers on a specified date by the total number of gallons sold in all such sales on that date. This weighted average was the level at which gasoline lawfully was priced for a particular class of purchasers on May 15, 1973, or if no transaction occurred on that date then on the most recent date preceding May 15 when such transactions within a class occurred. The weighted average price was subtracted from the price actually charged this particular buyer by the seller, to arrive at a basic overcharge figure; if the seller did not already pass through its full increment of costs to the buyer in a month, this cost increment figure was subtracted from the basic overcharge figure to arrive at a net overcharge figure. This net overcharge was multiplied by the volume of each grade of gasoline to arrive at the total overcharge figure to which the parties stipulated in the district court. *Id.* 734 F.2d at 805–06.

In its supplemental responses, Kickapoo also indicated that with respect to class of purchaser, it should have been placed in the unbranded noncontract wholesale class of purchaser. Kickapoo asserted that Clark extended different credit terms to contract purchasers than to noncontract purchasers.

Finally, Kickapoo identified Peter Johnson as an expert witness and stated:

> A. Mr. Johnson will testify on the manner in which Clark overcharged Kickapoo, the methodology Kickapoo has

used to demonstrate and compute such overcharges and the amount of such overcharges. . He will also provide an analysis of the applicable regulations and their effect upon the facts of this case.

B. Mr. Johnson will testify that based upon Clark WHL–137 forms, Clark invoices, Clark market price bulletins, as well as Clark pricing memos and other internal memoranda, and the deposition testimony of Clark employees, that Clark failed to use a proper price as its May 15, 1973 selling price under the regulations in computing Clark's maximum lawful selling prices to Kickapoo.

In response to the numerous interrogatories of Clark regarding such issues as computation of the weighted average price, banked costs and customary price differentials, and increased costs, Kickapoo stated that such information was set forth in the computer printout entitled "Computation of Overcharges."

At trial on February 21, 1985, Clark contended that it was prejudiced by Kickapoo's failure to supplement interrogatories until seven days before trial and by Kickapoo's failure to identify its expert witness until February 12. Clark asserted that because Kickapoo failed to identify its theory or alternate theories of the case, Clark had to prepare for every possible contingency. The court rejected Kickapoo's argument that, even if Kickapoo had identified its theory and answered Clark's interrogatories before the discovery deadline, it would have been necessary to supplement them after the *Gulf v. Dyke* decision in April 1984. In response, Kickapoo acknowledged that it intended to rely on the methodology set forth in *Gulf v. Dyke*, stating: "this is such a simple theory based upon numbers from Clark that while there may be some debate about the use of those numbers, there simply can be no question about what the theory involves and entails." The court then said:

In that case it probably won't require expert testimony if it's that simple. Mr. Schaars, I'm not going to let you call Mr. Johnson to explain a theory of methodology that was not revealed until something like ten days prior to trial in a case that has been pending for almost seven years.

The court did, however, permit Kickapoo to argue that as a matter of law the *Gulf v. Dyke* methodology was the controlling theory. The court also allowed Kickapoo to make a proffer of Johnson's qualifications and what his testimony as an expert would have been. Kickapoo stated that Johnson, as an expert in the area of energy relations, would testify as to the regulatory assumptions made and the basis for the assumptions he used in reaching his calculations. The court did allow Johnson to testify as a lay witness to explain how he prepared the computer printout setting forth each alleged overcharge and the sources for the data within it.

During cross-examination of Johnson, Clark introduced interrogatory responses, submitted to Clark on February 13, 1985, setting forth Johnson's qualifications as an expert witness and the substance and grounds of his expected testimony. Kickapoo then moved to "voir dire" Johnson as an expert witness based upon the admission of the interrogatory responses into evidence. The court denied the motion.

Kickapoo also produced evidence that from January 1973 to August 1976 it had sporadically purchased petroleum products, not pursuant to contract, from Clark's Granville and Green Bay terminals, and that Clark maintained at these terminals a class of purchaser for unbranded wholesale customers, a class of purchaser for branded wholesale dealer station customers, and a class of purchaser for branded company-owned station-retail customers. Kickapoo introduced evidence, based upon Clark's admissions, of Clark's posted May 15, 1973 selling price for unbranded wholesale class of purchaser, and of Clark's last sale to a purchaser in the unbranded wholesale class of purchaser, excluding sales to Naph-Sol, a contract purchaser. In addition, Kickapoo introduced Clark's Market Price Bulletins for the period in question to demonstrate the prices actually posted at Clark's

terminals. Further, Kickapoo presented the deposition testimony of Harry Bohnett, Clark's Assistant General Manager, that Clark charged the price listed in the Market Price Bulletin. Kickapoo proffered Clark's WHL/137 forms, which set forth the prices per gallon Kickapoo paid to Clark.

At the close of Kickapoo's case, the court indicated that it was aware Clark intended to move for a directed verdict.[3] Accordingly, the trial judge asked counsel for Kickapoo to "tell me why you think this case should continue." After Kickapoo summarized its position, Clark formally made a "motion for directed verdict dismissing the complaint." In granting the motion, the court stated:

*I now conclude that plaintiff has not sufficiently shown that there was a price other than the price that defendant used as its May 15th price that should have been used by defendant for its May 15, 1973 price.* That plaintiff has not adduced evidence to show that there was some other lawful price that defendant should have been basing its sales to plaintiff on, and that even if I were to find that the prices posted on May 15, 1973 for various classes of purchaser in Green Bay and Granville were the lawful prices or the base prices, *there is no evidence in the case to show that what made up the standard increment,* that could lawfully be passed on by defendant so as to support the plaintiff's contention that it was the subject of improper overcharges that were a violation of any of the provisions of the regulatory acts that are at issue in this case. (emphasis added)

On appeal, Kickapoo raises two arguments. First, Kickapoo asserts that the district court erred in excluding the testimony of Kickapoo's expert witness, Peter A. Johnson. Secondly, Kickapoo contends that the district court erred in directing a verdict against Kickapoo.

**I.**

The district court excluded the testimony of Kickapoo's expert witness, Peter Johnson, because Kickapoo did not name him or disclose the facts and opinions about which he would testify until the week before trial. Kickapoo argues that the exclusion of expert testimony must be based upon a showing of bad faith or prejudice, and Clark did not make such a showing. Kickapoo relies upon the test set forth in *Meyers v. Pennypack Woods Home Ownership Ass'n,* 559 F.2d 894 (3d Cir.1977), in which the Third Circuit held that the district court had abused its discretion in excluding the testimony of two fact witnesses who had not been identified until after the pretrial memorandum had been filed. The court in *Meyers* set forth the following factors to be considered in exclusion of witnesses not listed in a pretrial memorandum:

Decisions of this and other courts suggest the factors to be considered in resolving this question: bad faith on the part of the party seeking to call witnesses not listed in his pretrial memorandum; *see Clark v. Pa. R.R. Co.,* 328 F.2d 591 (2d Cir.1964), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1965); ability of the party to have discovered the witnesses earlier, *see Hunt v. Pa. R.R. Co.,* 41 F.R.D. 349 (E.D.Pa.1967); validity of the excuse offered by the party, *Thompson v. Calmar Steamship Corp.,* 331 F.2d 657, 662 (3d Cir.1964); willfulness of the party's failure to comply with the court's order, *Taggart v. Vermont Transportation Co.,* 32 F.R.D. 587 (E.D.Pa.1963), *aff'd* 325 F.2d 1022 (3d Cir.1964); the parties' intent to mislead or confuse his adversary, *Pakech v. American Export Isbrandtsen Lines, Inc.,* 69 F.R.D. 534 (E.D.Pa.1967); and finally, the importance of the excluded testimony, *Clark, supra.* Underlying

---

**3.** Because the proceeding was a bench trial, the court's characterization of its action as a directed verdict was erroneous; the court in effect granted an involuntary dismissal under Fed.R. Civ.P. 41(b).

the cases to which we have adverted are these basic considerations: (1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified, (2) the ability of that party to cure the prejudice, (3) the extent to which waiver of the rule against calling unlisted witnesses would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the court's order.

*Id.* at 904–05.

In *Meyers*, the plaintiff timely filed his pretrial memorandum on January 15, 1976; trial was set for March 17, 1976. On February 26, 1976, he learned of two potential new fact witnesses and sent to defendant's counsel with copy to the trial judge a letter stating that he wished to supplement the pretrial memorandum with the names of the two new witnesses. The letter concluded, "If you have any questions concerning the above, please do not hesitate to contact us." Defendant did not attempt to depose the witnesses, but instead wrote a letter to the trial judge pleading prejudice and surprise. Applying the above factors, the appellate court concluded that the district court abused its discretion in excluding the witnesses because the excuse for the failure to identify the witnesses sooner was based on the fact that they were not discovered until after the pretrial memorandum was filed; defendant made no attempt to minimize its alleged prejudice and surprise; defendant was familiar with one of the witnesses who was defendant's former president; and, significantly, there re-

mained almost three weeks after the letter was sent until trial.

■ Kickapoo asserts that the facts in the present case are so similar to those in *Meyers* that the same result is compelled here. Several factors, however, convince us otherwise. In *Meyers*, the plaintiff did not discover the witnesses until after the pretrial memorandum was filed. In oral argument, counsel for Kickapoo stated that it failed to supplement the interrogatories until February 14 because of an "oversight." [4] The supplemental responses were filed, unverified, almost two years after the close of discovery.[5] In view of the fact that Kickapoo did not identify Johnson as an expert witness until eight days before trial, we are unpersuaded by Kickapoo's argument that Clark failed to minimize any prejudice from the belated identification. Kickapoo's offer to make Johnson available for deposition the week before trial was inadequate, considering that Kickapoo failed to identify its theory or alternate theories of the case and did not provide Clark with an overcharge summary until *after* Johnson was identified as the expert witness.

Kickapoo also makes the argument that Clark was not prejudiced because Clark was aware of Johnson's involvement in the instant proceedings and had deposed Johnson in connection with the *Go-Tane* proceedings. Kickapoo states: "Clark knew of Mr. Johnson's involvement in this proceeding since 1980 and reasonably should have been informed of the methodology upon which Mr. Johnson would testify at least since the District Court's decision in *Kickapoo Oil Co. v. Murphy Oil Co.*, C.A. No. 78–C–478–C (W.D.Wisc., Dec. 10,

**4.** The record in this case does not support Kickapoo's contention that its failure to supplement its answers to interrogatories was an "oversight." Clark asked for identification of expert witnesses in February 1981 and in November 1982, and in its January 3, 1985 trial brief, expressed concern and an intent to object to expert testimony at trial. Thus, Kickapoo had to be aware that it had not designated an expert witness.

**5.** Kickapoo maintains that it could not have identified the methodology upon which Johnson

was to testify prior to the *Gulf Oil* decision in April 1984, since the methodology upon which Kickapoo premised its overcharge claim was set forth in *Gulf Oil*. Thus, Kickapoo asserts, even if it had designated Johnson as its expert witness and the grounds of his testimony prior to the discovery deadline of February 28, 1983, it would have had to amend its answers in light of *Gulf Oil*. We fail to see how judicial developments in April 1984 excuse the failure to identify an expert witness and the basis of his testimony until January 1985.

1984)." [6] We do not agree with Kickapoo that Clark should have possessed sufficient clairvoyance to anticipate not only who Kickapoo's expert would be, but to foresee as well which methodology the expert would employ. The duty was on Kickapoo to supplement its answers, not on Clark to guess what Kickapoo might do and then plan for every possible contingency.

Kickapoo claims that it experienced "insurmountable prejudice" as a result of the exclusion of Johnson's testimony. We conclude that any prejudice to Kickapoo was self-induced, resulting from Kickapoo's failure to supplement its responses until the eve of trial.

Whereas *Meyers* involved a failure to list witnesses in a pretrial memorandum, at issue here is the exclusion of evidence based upon Fed.R.Civ.P. 26(e), which requires a party "seasonably" to supplement responses with respect to "the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." The *Meyers* holding is inapposite, since the length of time needed to prepare cross-examination of a fact witness ordinarily will be much shorter than that needed to prepare for an expert witness intending to testify as to a complex pricing methodology. Kickapoo cites numerous cases in which an appellate court has reversed the district court ruling excluding the testimony of an expert witness. *See, e.g., Murphy v. Magnolia Electric Power Ass'n,* 639 F.2d 232 (5th Cir. 1981); *DeMarines v. KLM Royal Dutch Airlines,* 580 F.2d 1193 (3d Cir.1978). In this case, however, Kickapoo failed "seasonably" to notify Clark of Johnson's testimony required by Rule 26(e), since *neither* the expert witness *nor* the theory and substance of the expert opinion were identified by supplemental response until the week before trial. Consequently, we are unwilling to find that the district court abused its discretion in refusing to let Kickapoo's expert, to quote the district court, "explain a theory of methodology that was not revealed until something like ten days prior to trial in a case that has been pending for almost seven years." [7] *See Town of East Troy v. Soo Line Railroad,* 653 F.2d 1123, 1132–33 (7th Cir.1980), *cert. denied,* 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *Holiday Inns, Inc. v. Robertshaw Controls Co.,* 560 F.2d 856 (7th Cir.1977).

## II.

■ Federal Rule of Civil Procedure 41(b) provides in relevant part:

Involuntary Dismissal: Effect Thereof.... After the plaintiff, in an action tried by the court without a jury, has completed the presentation of his evidence, the defendant, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief....

Kickapoo contends that, under Rule 41(b), the district court erred in moving for a dismissal on Clark's behalf, thus reversing the burden of proof on the motion and wrongfully compelling Kickapoo to come forward to demonstrate why, under the facts presented, it was entitled to relief. Kickapoo's comments at trial are inconsistent with the position it now asserts, and in view of Kickapoo's own comments as well as those of the trial court, we conclude that the district court did not impermissibly shift the burden to Kickapoo in granting Clark's motion for dismissal.

■ Finally, Kickapoo contends that the district court clearly erred in concluding that: 1) Kickapoo failed to establish that Clark should have used a different "May 15, 1973" selling price; and 2) Kickapoo failed to introduce evidence of a standard

---

6. In *Kickapoo v. Murphy Oil,* the district court adopted the *Gulf Oil* methodology.

7. Kickapoo makes the argument that the district court erred in excluding Johnson's expert testimony after Clark introduced, without limitation as to its use, responses Kickapoo made to interrogatories setting forth Johnson's expert qualifications and the basis of his testimony. We find this argument to be without merit.

cost increment. To establish a right to relief under § 210 of the Economic Stabilization Act, the plaintiff has the burden of providing the specific data needed to prove the existence of an overcharge. *Longview Refining Co. v. Shore*, 554 F.2d 1006, 1011 (Temp.Emer.Ct.App.), *cert. denied*, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).

■ At trial, Kickapoo contended that Clark charged contract and noncontract unbranded wholesale purchasers different prices and thus should have established separate classes rather than only one unbranded wholesale class of purchaser. However, the prices Kickapoo offered to show an alleged discrepancy between the price charged to Naph-Sol, allegedly a contract purchaser, and the price charged to noncontract purchasers, such as Kickapoo, are not helpful in redefining class membership, as Kickapoo never established that these differing prices in fact were posted on the same date. Absent such proof of actual price discrepancies charged to members of a class on a specified date, the regulatory definitions of "class of purchaser" and "customary price differential" reflect no distinction between contract and noncontract purchasers in defining class membership. *See* 10 C.F.R. § 212.31, 39 Fed.Reg. at 1950 (Addendum at A–3); *see also* FEA Ruling 1975–2, 40 Fed.Reg. 10655, 10657 (1975).

■ We agree with the conclusion of the district court that Kickapoo failed to establish a specific price that Clark should have used as its "May 15, 1973" price. In addition, we concur with the finding that Kickapoo failed to proffer sufficient evidence to establish an accurate cost increment factor under the *Gulf Oil* methodology for computing overcharges.

■ Kickapoo failed to establish the "May 15, 1973" price that Clark should have used because it did not offer evidence of prices charged in actual transactions to any purchasers in Kickapoo's class of purchaser on May 15, 1973, or, if none, on the next preceding date when a transaction occurred. FEA Ruling 1977–5, 42 Fed.Reg. 15301, 15306 (1977). Kickapoo introduced evidence, in the form of interrogatory response, that the price Clark used as its "May 15, 1973" price for the unbranded wholesale class of purchaser was more than that charged on the *last sale* to an unbranded wholesale customer, excluding sales to Naph-Sol, on or before May 15, 1973. Evidence of the "last sale" is insufficient, however, to determine the weighted average price, absent proof that this was the only sale on that date or that all other sales were at the same price. FEA Ruling 1977–5 at 15306. Kickapoo did not even establish that a sale to Naph-Sol was involved in calculating the "last sale" price. Without specific evidence of actual transactions, the weighted average price could not be ascertained nor could the "maximum allowable price"[8] be determined; it is not possible to determine the existence of overcharges if the maximum allowable price is unknown. *See Gulf Oil*, 734 F.2d at 805–06.[9]

8. "Maximum allowable price" is defined in *Gulf Oil*, 734 F.2d at 805 as:
   "... the weighted average price at which the covered product was lawfully priced on May 15, 1973, computed in accordance with the provision of [10 C.F.R.] § 212.83(a), plus increased product costs and increased non-product cost incurred between the month of measurement and the month of May 1973." 10 C.F.R. 212.81.

9. Kickapoo attempted to circumvent this evidentiary problem through the deposition testimony of Clark's Assistant General Manager, Bohnett, which stated that Clark charged the prices listed in the Clark Market Price Bulletin, thus suggesting that the price charged in the "last sale" would have been the exact price charged to all customers. Taking this contention one step further, Kickapoo introduced evidence that Clark's posted prices on May 15, 1973 were considerably less than the "May 15, 1973" prices charged to Kickapoo. Based on Bohnett's testimony, Kickapoo asserted that the posted prices were the prices actually charged on May 15, 1973. Kickapoo failed to establish, however, that *any* sales were made by Clark on May 15, 1973. Another flaw in Kickapoo's reliance on Bohnett's testimony is that Bohnett did not specifically state that Clark adhered to the practice of not deviating from the Market Price Bulletin on or before May 15, 1973; his testimony is susceptible to an interpretation that he was referring to Clark's policy *after* the Mandatory Petroleum Allocation and Price Regulations were in effect.

As the district court concluded, Kickapoo also failed to provide sufficient data to compute the cost increment factor accurately. Kickapoo merely provided evidence of those cost increments which were already passed through to it and included in the price it paid. The *Gulf Oil* methodology also requires evidence of cost increments available but not yet passed through the Kickapoo and the other purchasers in its class. *See Gulf Oil*, 734 F.2d at 805.

In sum, the data introduced by Kickapoo was not sufficient to enable the district court to make specific findings on the existence of overcharges in a sum certain, a requisite to recovery. *See Longview*, 554 F.2d at 1018.

The judgment of the district court is AFFIRMED.