**GO–TANE SERVICE STATIONS, INC.,**
**Plaintiff-Appellee,**

v.

**CLARK OIL & REFINING CORPORATION, Defendant-Appellant.**

**No. 7–16.**

Temporary Emergency Court of Appeals.

Argued May 12, 1986.

Decided July 31, 1986.

Rehearing and Rehearing En Banc Denied Sept. 15, 1986.

---

Wayne E. Babler, Jr., with whom Nancy K. Peterson, Quarles & Brady, Milwaukee, Wis., were on brief, for defendant-appellant.

John B. Williams, Collier, Shannon, Rill & Scott, Washington, D.C., was on brief, for plaintiff-appellee.

Before CHRISTENSEN, JAMESON and MAXWELL, Judges.

PER CURIAM.

Go-Tane Service Stations, Inc. (Go-Tane), plaintiff-appellee, filed this action in district court on April 25, 1979, alleging violations of the Economic Stabilization Act of 1970 (ESA), section 210, 12 U.S.C. § 1904 note, as incorporated by reference in § 5(a) of the Emergency Petroleum Allocation Act (EPAA), 15 U.S.C. §§ 751–760h, and seeking recovery of over-charges and lost profits. The claims were tried to a jury over the affirmative defense of Clark Oil and Refining Corp. (Clark), defendant-appellant, that the claims were barred by Illinois' five year statute of limitations.[1] The jury returned a verdict in favor of Go-Tane for $279,667.00 gasoline overcharges and $2,967,466.00 lost profits. We reverse in part and affirm in part, holding (1) that the claims for overcharges arose more than five years before the commencement of the action and cannot be saved by resort to any continuing violation or kindred theory, and (2) that the claim for wrongful allocation injury first occurred within the five year period and was not barred or otherwise invalid.

## I. *Background*

Go-Tane is an unbranded wholesale buyer-reseller of motor gasoline. Clark is a refiner of motor gasoline and was one of Go-Tane's principal suppliers, as well as the supplier of its own branded retail dealers. Prior to 1973, Clark sold gasoline to unbranded wholesale accounts such as Go-Tane at prices lower than the prices to its branded retail dealers.

On August 20, 1973, the regulations promulgated under ESA became effective. 10 C.F.R. parts 210–212.[2] The pricing regulations precluded a refiner from charging a price in excess of the maximum allowable price equalling the weighted average selling price (WASP) it charged to the respective classes of purchaser on (or if there were no sales on that date, last before) May 15, 1973, plus certain increased costs. 10 C.F.R. § 212.82.[3] Clark admitted that it

---

**1.** The parties agreed that the applicable statute of limitations was five years for compensatory damages. Ill.Rev.Stat. ch. 110 § 13–205.

**2.** Part 210 contains "General Allocation and Price Rules," regulations applicable to both price and allocation regulations, 10 C.F.R. § 210.1. Part 211 contains "Mandatory Petroleum Allocation Regulations", and Part 212 contains "Mandatory Petroleum Price Regulations."

**3.** The parties and the district court defined "base price" differently. The district court defined base price as the maximum allowable selling price. Go-Tane defined base price as the May 15 weighted average selling price. Clark correctly notes that:

[The May 15 weighted average selling price] is sometimes referred to as the "base price." This term can be confusing.... Under the regulations, "base price" was defined as the May 15th WASP plus product cost increases, and "base price" plus *non*-product cost increases equalled the maximum lawful selling price, until February 1, 1976 when the term was dropped from the Refiner Price Rule altogether. *See* 10 C.F.R. § 212.82(f)(1) ...; 41 Fed.Reg. 15330 (April 12, 1976). It has never been defined as May 15th WASP in the regulations.

For our purposes we will define base price as defined in the regulations, and will refer to the May 15 weighted average selling price as the May 15 WASP.

incorrectly used an August 20, 1973 WASP rather than the correct May 15, 1973 WASP, thus increasing prices charged Go-Tane with reference to prices charged Clark's own branded dealers, in reversal of its historical practice and substantially altering the price differential between the two classes.[4]  Clark first overcharged Go-Tane in December 1973.

In its second amended complaint Go-Tane alleged six causes of action.  The district court, in an order dated June 7, 1984, held that the statute of limitations barred recovery of overcharges for violation of the pricing regulations under count I caused by an overinflated May 15 WASP, improper classification of Go-Tane, and failure to maintain customary price differentials, and under count III, caused by the imposition of stricter credit terms.  The district court further held that the statute of limitations did not bar recovery of overcharges for violation of the pricing regulations under count II, caused by improper product and non-product cost increases, and count IV, caused by improper recoupment of banked costs; nor did it bar recovery of lost profits for violation of the normal business practices rule under count V caused by the failure to maintain the customary price differential among classes of purchasers.  Go-Tane withdrew count VI for recovery of treble damages at the final pretrial conference. The parties in their briefs collectively refer to counts I through IV as the price claims, and to count V as the allocation claim.

In a subsequent order, dated July 26, 1984, the district court in effect reversed its earlier holding.  It reasoned that counts II and IV could not be proved without first proving violation under count I.  At trial Go-Tane recovered on all alleged pricing claims and on the allocation claim.

## II.  *Issues on Appeal*

Despite the wide range and complexities of the briefing, the problems before us on this appeal are quite narrow, as follows:

(1) whether the district court correctly held that the statute of limitations barred neither the price claims nor the allocation claim;

(2) whether the district court correctly instructed the jury that failure to maintain the customary price differential violated the normal business practices rule, 10 C.F.R. § 210.62;  and

(3) whether the district court abused its discretion when it permitted Go-Tane to use at trial expert computer computations not disclosed during discovery.

We consider these issues in order.

## III.  *The Statute of Limitations Bar*

### A.  *The Price Claims*

The statute of limitations begins to run when an act with decisive continuing effect causes initial injury at a given time, and the statute is not tolled with respect to continued injury of similar character following from the same act.  *CPI Crude, Inc. v. Coffman*, 776 F.2d 1546, 1552–53 (TECA 1985);  *Oerther v. Pennzoil Co.*, 763 F.2d 420, 421–22 (TECA 1985);  *Lerner v. Atlantic Richfield Co.*, 731 F.2d 898, 901 (TECA 1984);  *Western Mountain Oil, Inc. v. Gulf Oil Corp.*, 726 F.2d 765, 768 (TECA 1983);  *Fleetwing Corp. v. Mobil Oil Corp.*, 726 F.2d 768, 770 (TECA 1983).

Each price claim alleged by Go-Tane hinges on an improper act initiated by Clark with knowledge and over protest of Go-Tane and with injurious consequences to Go-Tane more than five years before the filing of the action.  *See Lerner*, 731 F.2d at 900.  Count I stemmed from the misclassification of Go-Tane, count III from the discontinuation of favorable credit terms, both acts occurring prior to April 25, 1974. In its June 7 order, the district court appropriately found counts I and III barred by the statute of limitations.  Likewise, improper product and non-product cost in-

---

**4.**  The parties stipulated that:
(i) on August 20, 1973, the first day on which price regulations were in effect, Clark charged Go-Tane a price nearly $.08/gallon higher than its "May 15th price," and (ii) used this higher August 20, 1973 posted price ("August 20th prices") as its "baseline prices" in all subsequent "base price" calculations.
July 26, 1984 order, app. 202.

creases under count II and improper recoupment of banked costs under count IV resulted from the use of an incorrect August 20th WASP, an act occurring more than five years before the action was filed. See 10 C.F.R. § 212.83(c), (h). The district court should have disallowed recovery on all price claims predicated on a single improper act. *Lerner*, 731 F.2d at 900.

The district court, however, allowed recovery for all overcharges collected within the five year period upon the jury's determination that "in addition to the use of an incorrect May 15, 1973 price" Clark made other errors calculating the price charged to Go-Tane between April 25, 1974 and March 1, 1979, in violation of the Refiner Price Rule and that "these additional violations resulted in further overcharges beyond those resulting from the use of any incorrect May 15th price." Interrogatories (2) and (3), App. 303–304. Aside from the quantification of damages, the district court determined all other questions bearing upon the statute of limitations as matters of law.

Go-Tane attempts to sustain the district court's ruling on the price claims by simply repeating the court's *ipse dixit* that the overcharges here were "plain" within the meaning of *Johnson Oil Co., Inc. v. DOE*, 690 F.2d 191, 196 (TECA 1982), without attempting to define the term as employed in that case.[5] It argues that Clark made "errors in addition to the May 15, 1973 base price error [which] increased the amount of overcharges," and that "Go-Tane therefore sustained its burden of demonstrating 'plain overcharges.'"

Although *Johnson* did not refer to "plain overcharges," our subsequent decisions employed the term to distinguish *Johnson*. While *Johnson* lends some support to plaintiff's contention that in a plain overcharge action each alleged overcharge should constitute a separate cause of action, this court was not squarely faced with that issue in *Johnson*. The conclusionary language in the directions to the district court upon remand should not be broadly construed to constitute a holding that each overcharge amounts to a separate cause of action.

*CPI Crude*, 776 F.2d at 1553. The price claims presented by Go-Tane do not constitute plain overcharges, as the term was used in *CPI Crude*. The price claims, instead, resulted from an underlying act causing the claims to accrue at a time barred by the statute of limitations.

We need not speculate here concerning what the rule should be had both types of overcharges spanning the period of limitations been involved. Subsequent errors in addition to Clark's basic one were asserted by Go-Tane, but review of the record persuades us that there is no substantial evidence that they could have contributed in any significant degree to the overcharges found by the jury. The trial court itself made no finding with respect to this, and as has already been noted, submitted to the jury the questions of whether there were within the period of limitations errors in addition to the incorrect May 15 pricing and whether they resulted in additional overcharges, but asked for no quantification whatsoever, and understandably so in view of the insufficiency of the evidence.

We conclude that Go-Tane's claim for overcharges, as such, based as it was upon an unlawful pricing practice applied by Clark with knowledge and over protest of Go-Tane with consequent injury beginning more than five years before the filing of this action, was barred by the applicable statute of limitations.

**B.  *The Allocation Claim***

With respect to the allocation claim, count V of the second amended complaint,

---

5.  Go-Tane also relies, in line with the district court's rationale, upon *Longview Refining Co. v. Shore*, 554 F.2d 1006, 1017–18 (TECA), *cert. denied*, 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 1973 (1977). It contends that a claim for overcharge requires proof of the correct May 15 WASP as well as increased costs. This is not helpful.

Irrespective of the number of pricing components necessary to establish an overcharge, the *Longview* problem of the insufficiency of findings as to one of them is irrelevant where, as here, the overcharges are conceded both in the district court and on this appeal.

the statute of limitations problem is significantly different. While necessarily relating to the separate overcharge claim, the differentiating gist of its foundation is the general allocation and price rules, separately issued by the agency, and the essentially different character and timing of the damages suffered by Go-Tane.[6]

Go-Tane alleged in its allocation claim that the actions taken by Clark against Go-Tane, including imposition of discriminatory and illegally high prices, constituted violation of the normal business practices rule, 10 C.F.R. § 210.62.[7] Go-Tane alleged these violations caused substantial damage, including lost profits, losses resulting from purchases from non-base period suppliers at higher prices, and other consequential damage. Essentially, Clark prevented Go-Tane from availing itself of its full allocation from Clark with consequent damages relating wholly to an occurrence within the statute of limitations period, the nature and amount of which, as found by the jury, are not questioned by Clark on appeal.

Go-Tane's allocation claim could not have arisen before Go-Tane was first injured as a result of that deprivation. At trial, without objection by Clark, Go-Tane maintained that it was not until June 1974, a time within the five year limitation period, that it was first unable to purchase its full allocation from Clark.[8] Certainly no action for such allocation damages could have been maintained before any allocation damage had occurred. It would be a perversion of the doctrine of limitations to conclude that a claim otherwise valid would become outlawed before it could be brought. We reject Clark's argument that before June, 1974, Go-Tane could have at least sought an injunction to prevent the occurrence of future allocation damage as without legal significance.

■ When an unlawful act does not immediately cause the injury sued for, but does so at a subsequent point of time, a plaintiff's cause of action does not accrue until injury has occurred. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77, *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). In *Oerther v. Pennzoil Co.*, 763 F.2d 420, 422 (TECA 1985), a

---

**6.** Although violations of part 210 entitled "General Allocations and Price Rules" are alleged, we shall follow the practice of the parties in generally referring to count V as the "allocation claim" because of its distinctive character as such.

**7.** 210.62. Normal business practices.

(a) Suppliers will deal with purchasers of an allocated product according to normal business practices in effect during the base period specified in part 211 for that allocated product, and no supplier may modify any normal business practice so as to result in the circumvention of any provision of this chapter....

(b) No supplier shall engage in any form of discrimination among purchasers of any allocated product. For purposes of this paragraph, "discrimination" means extending any preference or sales treatment which has the effect of frustrating or impairing the objectives, purposes and intent of this chapter or of the Act....

(c) Any practice which constitutes a means to obtain a price higher than is permitted by the regulations in this chapter or to impose terms or conditions not customarily imposed upon the sale of allocated product is a violation of these regulations.....

**8.** Go-Tane filed two briefs with the trial court arguing that whatever the outcome of the price claim on statute of limitation grounds, its allocation claim was not time-barred because that cause of action did not accrue until June, 1974 when Clark's high prices first prevented it from purchasing its allocation. Clark did not respond to either of these briefs on this point; nor did it introduce any testimony at the trial to establish that Go-Tane's initial injury from being deprived its allocation occurred prior to June, 1974. At the trial Clark seemed to rely entirely on its theory that the occurrence of overcharges more than five years before the filing of the action barred both the allocation and the overcharge claim, it having pled the statute of limitations as an affirmative defense only in general and indiscriminately as to all of plaintiff's claim. The pleading of the statute of limitations' defense as to all claims in the second amended complaint was singly in these words:

Plaintiff did not commence this action within the time permitted by law as provided in § 893.21(1) of the Wisconsin Statute and Chapter 15 of the Illinois Revised Statutes in that the causes of action accrued prior to the time limitations set forth. App. 63.

plaintiff had alleged that the defendant's revised pricing structure resulted in overcharges for which it sought recovery. The act which ultimately caused the injury occurred in October, 1973. Overcharges were not actually made until November, 1973. We held that the cause of action did not accrue until the latter month, when the first invoice was submitted pursuant to the improper price structure. *See, e.g., CPI Crude,* 776 F.2d at 1552–53 (similarly differentiating between the time the challenged conduct occurred and the resulting overcharges); *Siegel Oil Co. v. Gulf Oil Corp.,* 556 F.Supp. 302, 308 n. 11 (D.Colo. 1982) (stating, "A new cause of action would have accrued as of the date of plaintiff's closure since the injury is additional to and separate from buying gasoline at a high price."), *aff'd,* 701 F.2d 149 (TECA 1983).

■ Clark continues in effect to insist upon the indivisibility of plaintiff's two claims, although not so directly as it did at trial when it took the position that a suit for the recovery of overcharges was the exclusive remedy for price violation and preempted relief by way of additional consequential injury. Clark's primary reliance upon *Lerner v. Atlantic Richfield Co.,* 731 F.2d 898 (TECA 1984), to support this contention is misplaced. *Lerner* involved only one claim. *Id.* at 900. The plaintiff in *Lerner* did not request recovery of overcharges as well as lost profits. *Lerner* is not inconsistent with the rule that wrongful act plus consequent injury triggers the running of the limitations period, and contains no persuasive indication that the barring of an overcharge claim necessarily bars an allocation claim.

In its rebuttal brief, Clark asserted, for the first time, that the allocation claim, in itself, accrued before April, 1974, at a time barred by the statute of limitations. On appeal Go-Tane moved to strike this portion of Clark's brief. The generally respected rule is that contentions raised for the first time on appeal will not then be heard.

If there had been any question that the first allocation injury occurred prior to June, 1974, Clark should have requested submission of a special interrogatory to the jury. Without such request, the court may be deemed to have made a finding on that issue in accordance with the judgment on the special verdict. Fed.R.Civ.P. 49(a). In any event, we have concluded that there is no substantial evidence in the record to establish that Go-Tane was deprived of its allocation prior to June, 1974. The fact that Go-Tane purchased less than its full allocation during January through March, 1974, is neutralized by its purchase in April and May, 1974 of more than its allotment from Clark.

Clark seeks to place the onus, if not the *onus probandi,* upon the trial court for diverting a proper exploration of the time of the allocation injury by incorrectly applying to it the continuing violation theory which it had improperly applied to the overcharge claim. If there were fault in this respect it was more that of the defendant than the trial court which accepted its arguments. The right judgment otherwise amply supported should not be defeated on the basis of an unproved affirmative defense where the failure of the trial court to more responsively deal with it resulted from defendant's failure to rebut, or even address, the vital point on which the viability of its present position depended in the trial court.

Because the trial record establishes that Go-Tane was not injured by any allocation disruption until June, 1974, less than five years from the time this action was commenced, we believe plaintiff's allocation claim should be deemed not barred. Clark failed both procedurally and substantively to sustain its burden of establishing a viable affirmative defense to the contrary.

IV. *Jury Instructions on Normal Business Practices Rule*

The district court, with respect to the allocation claim, instructed the jury:

In order to prevail, plaintiff must establish each of the following elements by a preponderance of the evidence—

First: Clark had an obligation to make available to Go-Tane quantities of gasoline on a monthly basis each year from April 25, 1974 through February, 1979, at a lawful price.

Second: Clark failed to offer Go-Tane gasoline at a lawful price because of the practices alleged in the First Claim, [the overcharge or price claim], thereby overcharging Go-Tane under the Refiner Price Rule and discriminating against Go-Tane and circumventing the price and allocation regulations.

Third: Go-Tane failed to purchase the full amount of gasoline to which it was entitled because Clark offered it at a price in excess of the Refiner Price Rule or at a price which did not maintain the customary price differential between Clark's dealers and Go-Tane.

Fourth: Go-Tane was injured.[9]

Clark objected to these instructions on the grounds that: (1) the claims were time barred; (2) failure to maintain customary price differentials did not violate the normal business practices rule; (3) recouping overcharges is the exclusive remedy for price violations; and (4) the instruction directed the jury to find for Go-Tane.[10]

Except as noted above, Clark did not except to the court's general instructions or definitions, made no request for the submission of additional interrogatories or modification of those submitted by the court, and took no exception to their form or content. It is Clark's primary contention on appeal that the maintenance of customary price differentials was not required and that were this not so cost increases in actual selling prices would have to have been uniform or equal contrary to the regulations. For support, Clark cites *Mobil Oil Corp. v. DOE*, 728 F.2d 1477 (TECA 1983), *cert. denied*, 467 U.S. 1255, 104 S.Ct. 3545, 82 L.Ed.2d 849 (1984); *McWhirter Distributing Co., Inc. v. Texaco, Inc.*, 668 F.2d 511 (TECA 1981); and *Eastern Airlines, Inc. v. Mobil Oil Corp.*, 735 F.2d 1379 (TECA 1984). These cases do not aid Clark's position; on the contrary, read carefully they support Go-Tane's position.

■ Clark emphasizes that the "deemed recovery rule" allows unequal application of cost increases in actual selling price which would necessarily change the customary price differential. In *Eastern Airlines* this court stated:

not customarily imposed upon the sale of an allocated product is a violation of the regulations.

To establish the third element, Go-Tane must prove either that Go-Tane failed to purchase its full entitlement volumes because Clark overcharged Go-Tane or because Clark failed to maintain the customary price differential which existed on May 15, 1973 between Clark's own dealers and the plaintiff in violation of normal business practices.

**9.** The court supplemented, with further instructions:

In considering whether plaintiff has proven this claim, you must consider the application of the controlling regulations relevant to the allocation and pricing of gasoline. The regulations required a seller to offer to sell gasoline to its customers who purchased during the year of 1972. The number of gallons the seller was required to offer was determined by reference to the number of gallons purchased by that customer during the year of 1972. A seller was required to offer product to its 1972 customers at a lawful price.

To establish the second element, Go-Tane must prove that Clark modified its normal business practices in pricing the product offered to Go-Tane, thereby circumventing the price and allocation regulations, and discriminated against Go-Tane.

"Discrimination" means extending any preference or sales treatment which has the effect of frustrating the objectives and purposes of the regulations.

Any practice which constitutes a means to obtain a price higher than is permitted by the regulations or to impose terms or conditions

**10.** Clark also objected on the same grounds to special interrogatories submitted to the jury, including:

(5) Do you find that Go-Tane was entitled to purchase additional amounts of gasoline from Clark and that it did not purchase those amounts either because Clark was charging a price in excess of the Maximum Allowable Price under the Refiner Price Rule or because Clark did not maintain the customary price differential which existed on May 15, 1973, between Clark's own dealers and the plaintiff in violation of normal business practices?
(6) If the answer to question five was "yes," do you find that plaintiff suffered lost profits?

This "equal pass-through" provision does not, however, establish the prices that must be charged by a refiner. Rather, it affects the maximum price, at that time in the regulations referred to as the "base price," that could lawfully be charged under the regulatory system. Moreover, the subsequent promulgation of the "deemed recovery rule," as already discussed, had the effect of altering even this requirement—by permitting the unequal application of the increased costs to different classes of purchasers subject to the sanction of reducing the refiner's "bank" of unrecouped costs for purposes of calculating the maximum prices that could be charged in later months.

735 F.2d at 1382. *See also Mobil Oil,* 728 F.2d at 1489–90; *McWhirter,* 668 F.2d at 520. In these cases, consequential damages were not awarded for unequal pass through of costs because no violation of the refiner price rule had been established.

The regulatory preamble to the deemed recovery rule expressly states that unequal cost pass-throughs are permissible "as long as they are undertaken for a purpose and in a manner which does not conflict with § 210.62(b)." 41 Fed.Reg. 30.021–022 (July 22, 1976). This court in *McWhirter* recognized:

> The distributors alleged a violation of the "normal business practices" rule of section 210.62(a).... [A] modification of a "normal business practice" would have violated section 210.62(a) if the result had constituted a circumvention or frustration of its purposes or other regulations. Support for this view once again may be found in the preamble to section 212.83(h), recognizing that section 210.62(a) places limitations on a supplier's rights under section 212.83(h) by prohibiting modifications of normal business practices that would "circumvent the purposes of today's amendments."

668 F.2d at 523. In *Eastern Airlines* we held that damages could not be recovered because there had been no violation of the refiner price rule:

> The sole basis for Eastern's claim for discrimination under 210.62(b) is that it was charged prices which, although less than the ceiling prices, were greater than those charged another member of the same class of purchaser. Eastern does not contend that it failed to receive any products from Mobil....

735 F.2d at 1383.

The case now before us differs from *Eastern Airlines* and *McWhirter* in one vital respect. The price charged Go-Tane and its class was not only higher than that charged another class, consisting of Clark's own branded dealers in reversal of the historical price differential, but was so high as to amount to an unlawful overcharge. The record sufficiently demonstrates that Clark's use of an August 20 WASP prevented Go-Tane from purchasing its full allocation of gasoline in violation of § 210.-62, and was not excused by the deemed recovery rule.

■. In *McWhirter* we expressly rejected Texaco's argument that section 212.83(h) embodied such a balancing of EPAA's goals as to preclude related claims under the General Allocation and Pricing Rules. We now reject Clark's corresponding argument that the Refiner Price Rule balanced all EPAA's goals by providing a single remedy of recovering overcharges for departure from the normal business practices where the departure is itself illegal and additional injurious consequences have proximately resulted, as in the present case.

■ It is true that the legality of the alteration of the price differential and departure from normal business practices was not presented comprehensively as an issue for the jury. It did not need to be. The conclusion of illegality was a matter of law adequately indicated in the court's judgment on the verdict, in the light of the jury's determination of the remaining factual issues after the stipulated and uncontroverted facts were taken into consideration. Beyond its determination that the overcharges were unlawful, the jury expressly found as to count five that Go-Tane

was entitled to purchase additional amounts of gasoline under its allotment from Clark and that it did not do so because Clark was charging a price in excess of the maximum allowable price under the Refiner Price Rule or because Clark did not maintain the customary price differential which existed on May 15, 1973, between Clark's own dealers and Go-Tane, in violation of normal business practices. As a result Go-Tane suffered lost profits in a stated amount beyond any damages recoverable by virtue of its overcharge claim. The jury was not directed to find for Go-Tane.

### V. *Admissibility of Expert Testimony*

█ Clark contends that the district court abused its discretion in permitting Go-Tane's expert to testify on the computation of damages. Clark argues that Go-Tane failed to seasonably supplement discovery responses, as required by Fed.R. Civ.P. 26(a), and that this failure mandated the exclusion of the expert's testimony.

We do not approve the delayed, circumventive and grudging responses by Go-Tane to some of Clark's interrogatories and its belated correction of information furnished. Nor was Clark's failure to effectively meet this situation by timely remedial countermeasures a model of advocatory resourcefulness.

No useful purpose would be served in retracing the trails and tactics of the respective parties as they seek to do in their briefs; nor to review the factors that should be considered in determining whether discovery irregularities justify witness preclusion. This, in many respects, would be a rerun of *Kickapoo Oil Co. v. Clark Oil & Refining Corp.*, 788 F.2d 11 (TECA 1985).

In *Kickapoo* we held that the preclusion of the testimony of an expert witness for inadequate discovery responses did not constitute an abuse of discretion on the part of the trial judge. It is interesting to observe,

and only to a degree significant, that the expert witness in *Kickapoo* was the same witness in the case now before us, that counsel for Kickapoo was Go-Tane's present counsel, and that the same attorney represented Clark in both cases. Despite the long drawn out proceedings in both cases, it would be fair to note that our decision in *Kickapoo* was filed after the trial of the present case.

Suffice it to say that the trial judge in the case at bar generally applied the criteria later reviewed in *Kickapoo*, recognized that there were considerations before him that appear not to have been present in *Kickapoo*, appropriately observed that Clark's counsel seemed to know more about the expert's testimony than he had professed in his objection, later confirmed by his searching cross-examination, and reasonably weighed the relevant circumstances bearing upon the drastic remedy of preclusion. *See, e.g., Dudley v. South Jersey Metal, Inc.*, 555 F.2d 96 (3d Cir.1977). We cannot say that the district court's allowance of the expert's testimony at trial constituted an abuse of discretion.

### VI. *Conclusions*

We have considered the other arguments and supplemental points presented in Clark's briefs and argument and find them to be without merit in militating against the conclusions reached here.

As to the pricing claims for overcharges, the judgment is reversed and the case is remanded with directions to dismiss those claims with prejudice. As to the allocation claim, the judgment is affirmed.

Reversed in part and affirmed in part.